Herman Ockenga et al., Appellants, v. John Alken et al., Appellees.

Gen. No. 41,876.

Heard in the second division of this court for the first district at the February term, 1941. Opinion filed February 10, 1942. Rehearing opinion filed April 28, 1942. Rehearing denied May 13, 1942.

THOMAS TIGHE and GOLD & LIEBMAN, all of Chicago, for appellants; THOMAS TIGHE and CHARLES LIEBMAN, both of Chicago, of counsel.

HOFFMAN, HOFFMAN & McCABE, of Chicago, for appellees; HARRY HOFFMAN, of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Plaintiffs are the owners of three lots in Nixon's Terminal Addition to Westchester, a village in Cook county approximately five miles west of the Chicago city limits. Their deeds of conveyance contain covenants restricting until 1970 the use of the lots for any purpose other than the construction of three-flat brick buildings to cost not less than $18,000. They filed a complaint in equity, referred to as a "quasi-representative" suit, in which other property owners who might choose to claim the benefit of these proceedings were invited to join, seeking by the decree of the court to modify these building restrictions. Some 15 other property owners moved to strike the complaint on the ground that it did not set forth a cause of action and for various other reasons assigned, including one that certain portions of the prayer for relief were in contravention of the Constitution of the United States. The court allowed the motion to strike, and plaintiffs having elected to stand by their complaint, the cause was dismissed for want of equity. They thereupon prosecuted an appeal direct to the Supreme Court of Illinois, where pursuant to an opinion filed April 15, 1941 (*Ockenga v. Alken,* 376 Ill. 533), the court transferred the cause to this court for determination because no constitutional question was involved.

From the salient allegations of the complaint it appears that the village of Westchester was organized in 1925 and covers an area of approximately 2,200 acres. It contains a population of about 600 people, who reside in 145 buildings, 3 three-flats, 21 two-flats and 121 single-family dwellings, substantially all of which were constructed prior to 1929. The total area of the lots occupied by these buildings covers approximately 20 acres, so that improvements have been built on lots extending over less than 1 per cent of the total area of the

village, and lots covering more than 99 per cent of the total area are still unimproved. No buildings have ever been constructed in this subdivision except one three-flat, which was built by the promoters prior to 1929 at a cost of $25,000 exclusive of the land. This property was recently sold for $9,500, including the land and a three-car garage.

The subdivision was laid out in 1926, the year after the village was incorporated. It is alleged that in order to make the lots thereof appear to have a higher value so that greater prices could be obtained for them, the subdividers caused the deeds of conveyance given to purchasers to contain covenants restricting the use of the lots for any purpose other than the construction of three-flat buildings to cost not less than $18,000; that the purchasers of the lots were told by the seller that the property subjected to these restrictions was particularly suited for three-story apartment buildings and that the purpose of the restrictions was to maintain the premises at a higher value and to enable them to be utilized on the basis of their highest economic value.

Plaintiffs further aver that these representations proved to be wholly groundless; that the promotion failed with the collapse of the real estate boom after 1929, and the village of Westchester failed to develop; that it has been impossible to obtain capital to finance the construction of three-flat buildings on plaintiffs' lots and on the other portions of the subdivision; and that the recent sale for $9,500 of the 11-year old three-flat building originally costing $25,000 demonstrates that it is economically unfeasible to construct three-flats for $18,000 in this subdivision.

The complaint alleges that since the adoption of the United States Government housing policy, loans for the construction of single-family dwellings may be obtained upon property situated as in this subdivision; that by virtue of changing financial and general con-

ditions, the subdivision is now well adapted for the construction of single-family dwellings, and for the same reason is wholly unadapted for the construction of three-flat residential buildings, as provided in the restrictions; that so long as the restrictions remain of record against the premises, they constitute a cloud on title and make all the real estate wholly valueless for any purpose; that in other subdivisions in the village of Westchester which were restricted to two and three-flat buildings no such buildings have been erected, but when those restrictions were recently removed the building of single-family dwellings on a large scale immediately followed.

It is further alleged that a large number of the lots in this subdivision have defaulted heavily on general real estate taxes so as to become a drain and burden upon the community; that improvements have been constructed, for which special assessments have been levied, and many of the lots are in default on special assessments, whereby the owners of the special assessment bonds have been deprived of their security and of repayment of their money, and the credit of the community has been and continues to be damaged; that if and when the restrictions are removed, so that the parts of the subdivision adapted for residential purposes may have built on them single-family dwellings, then all the lots of the subdivision will obtain a substantial economic value, loans will be available for building and paying back taxes and special assessments, and the individual owners of the lots and the community as a whole will be greatly benefited.

It is alleged that the suit was brought to remove or modify the restrictions on the lots and to obtain a decree providing for the construction of one-family dwellings thereon costing not less than $5,000; that the suit is brought not only for the benefit of plaintiffs but of all other lot owners who desire to join in the prosecution thereof, or partake of the benefits of the

decree which might be entered, and who will contribute a fair and just amount to the expense of the prosecution of the proceeding. Plaintiffs asked for an injunction from any attempt at enforcement of the $18,000 three-flat building restriction, and for such other relief as may be just and equitable.

The principal ground urged for reversal of the decree is that equity has jurisdiction to remove or modify restrictive covenants, when to do so will not unjustly injure other property. *Cuneo v. Chicago Title & Trust Co.*, 337 Ill. 589, is relied on principally as authority in this State for the relief sought. In that case the court held that the evidence did not make out a cause for removal or modification of the restrictive covenants, but plaintiffs' counsel in the case at bar rely on observations made by the court by way of *dictum* in its review of the general subject, that under certain circumstances not present in that proceeding the court may authorize the removal of restrictions. However, the circumstances which the court evidently had in mind must be such as to justify the conclusion that there has been such a change in the neighborhood of the property as to warrant a court in relieving the owner thereof from the restrictions imposed. The court pointed out that "if the character of the property on Castlewood Terrace had by the *acts of the owners thereof* changed to the extent justifying a court of equity to remove restrictions that court should not hesitate so to do, but the fact of change in the neighborhood . . . does not, alone, warrant a court of equity in relieving the property of appellants here from the restrictions imposed." (Italics ours.) The opinion then proceeds with the observation that the property owners knew when they purchased their respective lots of the restrictions on the use to which they could put their property and that doubtless the knowledge of these restrictions, to some extent, affected their judgment as to the price which they should pay

for these respective lots. *"Having purchased them subject to restrictions they are bound by them so long as the restrictions are reasonable and not contrary to some public policy or some positive rule of law."* (Italics ours.) The *Cuneo* case seems to emphasize the requirement that the change in the character of the property and in the neighborhood must be due to some act or acts of the owners or grantors before equity will afford relief from the restrictions. Plaintiffs' bill contains no such allegations, but on the contrary it alleges that no buildings have been constructed in the subdivision for many years and that no changes have taken place, either in the property or in the subdivision. Plaintiffs do allege that there have been changes in the general economic conditions and in the real estate market since the creation of these restrictions, but there is no claim that the change is due to any act of the lot owners or the grantors. It must be presumed from the allegations of the complaint that the reason more three-flat buildings of the kind provided for in the restrictions were not built during the period following 1929 was because some of the lot owners suffered financial reverses during the depression.

Another case relied upon by plaintiffs is *Osius v. Barton,* 109 Fla. 556, 147 So. 862. In that proceeding adjacent property owners in the subdivision which was restricted to residences sought to enjoin the use of a dwelling house on defendants' lot for business purposes as a beauty parlor. Defendants interposed a cross bill setting forth change in the circumstances and character of the neighborhood without fault on the part of defendants, claiming that the property had become almost useless as a residential property and had practically no income value as such, although heavily assessed for burdensome taxes, and that a due return on the property could be realized from it only as business property and not as residential property. Defendants there argued that to enforce and continue

the requirement imposed by the restriction would amount to a practical confiscation of the property, while on the other hand it would be to the best interests of the community that the restrictions be removed because they were no longer capable of serving the purpose for which they were imposed in the first instance. The court held that under such circumstances equity would not only refuse to enforce restrictive covenants by way of injunction, but that it would go further and remove the no longer useful restrictions as a cloud on title, on the theory that in such cases there is an implied condition in the original grant that the general policy of the law to dispense with encumbrances on title should prevail where enforcement of restrictive covenants is no longer of general usefulness nor capable of serving the purpose for which the restrictions were imposed. This rule is undoubtedly supported by respectable authority, as indicated in a note in 88 A. L. R. 405, but it applies only to cases where changes in the neighborhood have been so radical that the restriction can no longer serve the purpose for which it was imposed. The complaint in the case at bar indicates no such changes in the neighborhood of Westchester as to justify the application of the rule in the *Osius* case.

In *Turney v. Shriver,* 269 Ill. 164, the court was called upon to construe a building restriction in a deed with respect to the surrounding neighborhood, and in discussing the matter of relieving property owners from the obligations of restrictive covenants voluntarily entered into, the court pointed out that although it may be a hardship on the owners to enforce a strict compliance with the covenant in question and thereby prevent them from devoting their property to a use which, by reason of the subsequent development of the subdivision and change in conditions was apparently advantageous to them, that fact alone would not warrant relieving the property owners from the obligations of their bargain, and said, ''Appellants

knew, when they purchased the lot, of this restriction in the deed and the manner in which it might be used and the restrictions to which it was subject. These matters were all undoubtedly taken into consideration by the parties in fixing the price of the lot at the time it was sold, and if such restriction was a damage to the lot appellants received full advantage of the same at the time they purchased the lot. At any rate, they purchased the lot subject to those conditions and restrictions, and are now bound by them so long as the restrictions are reasonable and *not contrary to the public policy or some positive rule of law.*" (Italics ours.) (Citing *Frye v. Partridge,* 82 Ill. 267; *Van-Sant v. Rose,* 260 Ill. 401.)

Counsel for defendants in the case at bar call our attention to the fact that there are many other lots in the same subdivision restricted to single-dwelling purposes, while others in the neighborhood are restricted for business purposes only. All restrictions were imposed as a part of a general plan for the benefit of all the lots, and each lot owner took the same with notice of the restrictions, which were undoubtedly used as an inducement in the sale of these lots, and the price paid depended on the nature of the restriction involved. The complaint does not charge that these restrictions were unreasonable, or contrary to public policy, or that they were improperly imposed upon property owners without full notice to the grantees. In fact, Ockenga, one of the plaintiffs, purchased his lot subject to the restrictions more than three years after they were created, and the Hintzes, the other plaintiffs, acquired their property subject to the same restrictions 14 years after the creation thereof, and only about six months before the complaint herein was filed.

One of the reasons assigned in support of the motion to strike the complaint was that the suit does not come under the classification of a representative suit. This question is discussed in counsel's briefs, but in view

of our conclusion on the principal question involved, we deem it unnecessary to discuss this proposition.

We hold that the superior court properly allowed the motion to strike the complaint and ordered dismissal thereof. The decree is, therefore, affirmed.

*Decree affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.

## ON REHEARING.

An opinion was filed in this cause February 10, 1942, and thereafter rehearing was granted. The principal argument advanced in the petition for rehearing is that there has been such a change in the neighborhood of the subdivision as to furnish cause for the removal or modification of the restrictive agreements. Plaintiff's counsel sought by motion to supplement the record with photographs of the subdivision, maps and other data showing changes in the neighborhood and the development of such defense industries within a short radius as would create a demand for single-family dwellings in the subdivision if the restrictions were modified or removed. The proffered evidence not having been adduced upon the trial of the cause, we have no jurisdiction to consider it.

Upon careful consideration of the petition for rehearing we adhere to our original opinion. However, nothing stated in our opinion is intended to preclude parties in another proceeding from showing, if they can, that radical changes have taken place in the neighborhood of the subdivision since the decree in the case at bar was entered.

The decree of the superior court is affirmed.

*Decree affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.