ELI KATZ, PLAINTIFF, v. THEODORE FARBER, DEFENDANT-RESPONDENT, AND CLARA FARBER, DEFENDANT-APPELLANT.

Argued March 13, 1950—Decided April 24, 1950.

334

*Mr. Samuel Koestler* argued the cause for respondent (*Messrs. Koestler & Koestler,* attorneys).

*Mr. Milton M. Unger* argued the cause for appellant. (*Messrs. Milton M. and Adrian M. Unger,* attorneys).

The opinion of the court was delivered by

CASE, J.  Farber and wife, the present litigants, signed a contract for the sale of real property acquired by Farber before his marriage. When the time came for closing Mrs. Farber refused to sign the deed. Katz, the vendee, sued in the Superior Court, Chancery Division, for specific performance. There followed a consent order directing the Farbers to execute and deliver the deed and directing Katz to pay into court the unpaid balance of the contract price. Those directions were obeyed. A further command in the order was that "said sum ($21,797.23) shall be received by and deposited with the Clerk of this Court subject to the rules of this court and subject to the respective rights of said defendants therein  *  *  *  to the same extent as their rights existed in said real estate at the time of delivery of said deed of conveyance; and that the fund so deposited is to remain in court until deposited (disposed) of by the order of this court upon appropriate application by said defendants or either of them."

This branch of the proceeding was instituted by the filing of a petition by Farber for leave to withdraw from the fund so much of it as belonged to him outright, the remainder—whatever the court might find should be held to answer the inchoate dower of Mrs. Farber—to be retained in court. Mrs. Farber came in with an answer and cross-petition asking that so much of the deposit as equaled the value of her inchoate right of dower be paid to her forthwith. She based her application upon an alleged contract said to have been made orally between her and her husband whereby the latter undertook, on the sale of the property to Katz, to devote the proceeds to the purchase of real estate and the erection therein of a home to be owned and occupied by both. Farber denied the contract. The court, after taking proofs, found that the contract had not been proved and dismissed the cross-petition. It also found that it was without present power to value the inchoate right of dower of Mrs. Farber or to make an award to her of counsel fees. Farber was permitted to withdraw the sum of $10,797.23. The balance, $11,000, was impounded in court to insure the payment of appropriate income to Mrs. Farber if and when her dower should become consummate, the income therefrom meanwhile to be paid to the husband.

The wife, appealing, presents four points, of which the first is that the court below erred in holding that the alleged agreement had not been made. We are of the opinion that the status of the proofs quite sustains the finding.

It is next said that Mrs. Farber is presently entitled to receive a portion of the fund. This claim is negatived by our finding on the first point. She has no right in or to the fund except as it represents realty in which she had an inchoate right of dower. Inchoate right of dower in this State is a present fixed and vested valuable interest of a wife in her husband's estate of inheritance in land of which he is seized, subject to divestiture by the death of the wife in the lifetime of the husband. *Gerhardt v. Sullivan*, 107 *N. J. Eq.* 374 (*Ch.* 1930). Mrs. Farber's right of inchoate dower may never become consummate; if it does, the right will end with

her death. *R. S.* 3:37–1. In this State, in the absence of legislation and without the consent of the parties in interest, a widow has no right to elect, and the court is without power to allow, a lump sum in lieu of dower. *Potter v. Watkins,* 104 *N. J. Eq.* 13 (*Ch.* 1928); *Kouvalinka v. Geibel,* 40 *N. J. Eq.* 443 (*Ch.* 1885). The same principle applies to inchoate dower. This is implicit in *Wheeler v. Kirtland,* 27 *N. J. Eq.* 534 (*E. & A.* 1875), where it was said (italics inserted), "The land is transmuted into money. It assumes a shape where she (the wife) can claim her right without interfering with the public. Equity will secure to her that portion of the award (in condemnation) which represents her inchoate dower. \* \* \* That being so, *the parties desire* a sum in gross, in preference to the securing of one-third of the principal, to await the event of her surviving her husband." We have no statute pertinent to the facts of the case.

Appellant's third point is that the alleged agreement between her and her husband is not barred by the Statute of Frauds. The proofs were received, and although motion to strike was made they were not, so far as the record discloses, stricken. Inasmuch as the Chancery decision did not and ours does not rest upon that controversy, we find it unnecessary to discuss the moot question.

Finally, it is argued that the court below had the power to award a counsel fee to Mrs. Farber chargeable against the fund. Disposition of this point leads to a study of the subject of allowances in its various aspects.

Counsel fees awarded by order of court are analogous to costs; in fact they are to be classed in the same category, and the rule was that the right to costs in legal proceedings was based, directly or indirectly, on statute. *Stale v. Blake,* 36 *N. J. L.* 442 (*E. & A.* 1872); *Apperson v. Mutual Benefit Life Ins. Co.,* 38 *Id.* 388 (*Sup. Ct.* 1876); *Hopper v. Freeholders,* 52 *Id.* 313, 318 (*Sup. Ct.* 1890); *Fitzsimmons v. Bonavita,* 77 *N. J. Eq.* 277 (*Ch.* 1910). At common law there was no such thing as costs of suit; and no person, whether plaintiff or defendant, was entitled to costs of suit

in any action, real, personal or mixed. *Lehigh Valley R. R. Co. v. McFarland,* 44 *N. J. L.* 674 (*E. & A.* 1882). Special allowances to counsel, except in certain classes of cases, stood on no better footing. When authorized by statute they were usually in cases of equitable cognizance. *Cf. c.* 158, *P. L.* 1902, § 91, amended *c.* 261, *P. L.* 1910, 1 *C. S., p.* 445; *R. S.* 2:29–131, 2:65–31. In Chancery the rule was briefly and clearly stated by Vice-Chancellor Backes as follows: "Allowance of counsel fee rests solely on the statutes, except where trust funds in the control of the court are being administered;" *In re Welsh,* 93 *N. J. Eq.* 303 (*Ch.* 1922). The same Vice-Chancellor, sitting as Vice-Ordinary, had already said: "It required an act of the legislature to empower the Court of Chancery to award counsel fees to a successful complainant (*P. L.* 1902, *p.* 540), and another to permit the court to grant such allowance to a successful defendant (*P. L.* 1910, *p.* 427);" *In re Queen,* 82 *N. J. Eq.* 588 (*Prerog.* 1913). To like effect, *Miller v. Marshall,* 115 *N. J. Eq.* 545 (*Ch.* 1934). The application of the statutes was not extended beyond their plain language, *e. g., McMullin v. Doughty,* 68 *N. J. Eq.* 776 (*E. & A.* 1905). Allowance of a counsel fee to an unsuccessful litigant was denied, *Sparks v. Ross,* 82 *N. J. Eq.* 121 (*Ch.* 1913), until *c.* 116, *P. L.* 1915, § 6 authorized such an award. The award of compensation to counsel for receivers of insolvent corporations was based on former section 85 of the Corporation Act, 2 *C. S., p.* 1652, now *R. S.* 14:14–22, *Simpson v. Vitaphone Company,* 88 *N. J. Eq.* 430 (*Ch.* 1917), but it was held that claimants against the receiver were not entitled to such allowances either by the Corporation Act or the Chancery Act, *Porch v. Agnew Co.,* 72 *N. J. Eq.* 319 (*Ch.* 1907). However, counsel fees were long allowed in suits for divorce and on application for alimony *pendente lite* where it reasonably appeared that marriage existed. *Vreeland v. Vreeland,* 18 *N. J. Eq.* 43 (*Ch.* 1866); *Profenius v. Profenius,* 90 *N. J. Eq.* 45 (*Ch.* 1919).

In view of the broad statutory power then lodged in the Court of Chancery to award counsel fees, it is not apparent

why the Court of Errors and Appeals in *Warker v. Warker,* 109 *N. J. Eq.* 106 (1931), was led to reach outside of that authority in supporting a Chancery award, unless for the reason that the decision had to do with a controversy between solicitor and client and was considered as not within the purview of the ordinary statutes on fees and costs. *Cf. Strong v. Mundy,* 52 *N. J. Eq.* 833 *(E. & A.* 1894); *Clements v. Clements,* 129 *N. J. Eq.* 350, 352 *(E. & A.* 1941).

The allowance of costs and counsel fees out of the estate on proceedings for the probate of a will at the trial level was grounded in section 197 of the Orphans' Court Act, *C. S.* 3885, *R. S.* 3 :2–51; and here, too, awards were refused when they were not within the statute, *Burr v. Burr,* 53 *N. J. Eq.* 627 *(Prerog.* 1896); *Meyers' Case,* 71 *N. J. Eq.* 724 *(Prerog.* 1906); *In re Michelsohn,* 136 *N. J. Eq.* 387 *(Prerog.* 1944). The Prerogative Court, in matters relative to the probate of wills, had original jurisdiction as well as an appellate jurisdiction, *Kayhart v. Whitehead,* 77 *N. J. Eq.* 12, 16 *(Ch.* 1910); affirmed, 78 *N. J. Eq.* 580 *(E. & A.* 1911), and could make allowances in the exercise of its original jurisdiction, *Greene v. Raynolds,* 133 *N. J. Eq.* 342 *(E. & A.* 1943), but not in its appellate jurisdiction without an enabling statute, *In re McCabe,* 124 *N. J. Eq.* 254 *(E. & A.* 1938); *In re Brooks,* 106 *N. J. Eq.* 242 *(E. & A.* 1929), except where it had jurisdiction over the "fund or estate," *In re Fisher,* 115 *N. J. Eq.* 329, 333 *(E. & A.* 1933).

The rule as generally observed in the Court of Errors and Appeals, a strictly appellate jurisdiction, with respect to allowances for services in that court as distinguished from a review of the propriety of allowances in the lower courts, was that allowances were not made except in administration cases, will cases and divorce or maintenance cases. It was stated in *Nobile v. Bartletta,* 112 *N. J. Eq.* 304 *(E. & A.* 1932), that "Application for counsel fees are, in general, denied in this court except where a wife prevails in a divorce or maintenance action, a will is sustained or the litigation concerns a fund in court." Thenceforward we find recurring refer-

ences to a "fund in court," and it becomes necessary to determine with some degree of definiteness what is meant by that expression. The decision in *Universal Indemnity Ins. Co. v. Caltagirone,* 119 *N. J. Eq.* 491 (*E. & A.* 1935), stated the foregoing quotation from the *Nobile* opinion and held that a sum deposited by the complainant pursuant to an order of the Court of Chancery as security for the payment of a law judgment on complainant's suit to enjoin further proceedings under a law execution issued against it on that judgment was not the subject of the then pending litigation and that therefore the application for counsel fee should be denied; in other words, that under the circumstances of that case, money, although on deposit as security against the result, was not a fund in court for the purpose of allowances. *Stelser v. American Stores Co.,* 125 *N. J. L.* 275, a Court of Errors and Appeals decision made in 1940, did not use the formula "fund in court," but, following the *Nobile* decision in point of time, and wording its own version of the rule regarding allowances in a lower court as well as in the appellate court, said: "The right to counsel fees * * * generally with certain exceptions, as for example divorce cases, will cases and administration of trusts, is wholly a [creation] of statute." *Clements v. Clements, supra,* deprecated the movement toward making allowances in Chancery in amounts equivalent to indemnification to the successful party for his entire legal expense and said:

"The trend has, we believe, resulted from several inducing causes, foremost among which has been the tendency to make general a practice which has been and should be confined to particular fields of litigation, such as where trust funds in the control of the court are being administered, *In re Welsh,* 93 *N. J. Eq.* 303, or the proceeding is of divorce or like matter relating to the marriage status and the well-recognized 'suit money' is allowed; or there is legislative authority peculiar to the proceeding, as in receiverships, *R. S.* 14:14–22/23, or will contests, *R. S.* 3:2–51; or the action is for recovery—this chiefly in the law courts—upon some proceeding wherein compensation had been paid for legal services not involved in the immediate suit, *e. g.,* recovery in an action for malicious prosecution for legal expenses incurred in the suit maliciously instituted, which, of course, does not come within the category of court allowances."

Some of our cases, *e. g., Greene v. Raynolds, supra,* have cited *United States v. Equitable Trust Company,* 283 *U. S.* 738, 75 *L. Ed.* 1379 (1930), as support for charging counsel fees upon a "fund in court." That case concerned the property of one Barnett, who was a full-blood Creek Indian and therefore a ward of the government, who had become wealthy because of oil operations on his allotted land, who also had become incompetent and been subjected to the appointment of a guardian, and whose property had been dissipated with the approval of the Secretary of the Interior. A next friend, with counsel, waged a long legal contest which finally resulted in restitution. The court said:

"It is a general rule in courts of equity that a trust fund which has been recovered or preserved through their intervention may be charged with the costs and expenses, including reasonable attorneys' fees, incurred in that behalf; and this rule is deemed specially applicable where the fund belongs to an infant or incompetent who is represented in the litigation by a next friend. 'Such a rule of practice,' it has been said, 'is absolutely essential to the safety and security of a large number of persons who are entitled to the protection of the law—indeed, stand most in need of it—but who are incompetent to know when they are wronged, or to ask for protection or redress.''

The case carries elements of a trust fund and of a pseudo-relationship of attorney and client.

In *Cintas v. American Car & Foundry Co.,* 133 *N. J. Eq.* 301 *(Ch.* 1943); affirmed, 135 *N. J. Eq.* 305 *(E. & A.* 1943), the complainant, a preferred stockholder, succeeded in his suit to restrain the defendant corporation from paying a proposed dividend to common stockholders from moneys in which the preferred stockholders had prior rights. *Cf.* 131 *N. J. Eq.* 419; affirmed, 132 *N. J. Eq.* 460. Chancery considered that the complainant, if he did not create, at least preserved and protected a fund, at his own expense, and brought that fund under the control of the court for the benefit of a class which should, in good conscience, bear their fair share of the burden of litigation. Acting upon the theory that a fund which has been protected by a court for the benefit of a class is, in a broad sense, a common trust fund and

that the allowance was as between counsel and client, the court awarded an allowance to counsel for the complainant payable from a fund which, by court direction, had been deposited in a bank to remain there abiding further order. The Court of Errors and Appeals affirmed the order.

That having been, in general, the state of the law and the practice, the Supreme Court under the widened court authority adopted this rule:

"3 :54–7. Counsel Fees.

"No fee for legal services shall be allowed in the taxed costs or otherwise, except:

"(a) in a matrimonial action. In such an action the court in its discretion may make an allowance to be paid by any of the parties to the action, charging, if it deems it to be just, any party successful in the action; but no allowance shall be made as to nonmatrimonial issues joined with matrimonial issues.

"or (b) out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury.

"or (c) in an uncontested action for the foreclosure of a mortgage. The allowance shall be calculated as follows: on all sums adjudged to be paid in such an action amounting to $5,000 or less, at the rate of 2%; upon the excess over $5,000 and up to $10,000 at the rate of 1%; and upon the excess over $10,000 at the rate of one-half of 1%.

"or (d) as provided by these rules or by law with respect to any action, whether or not there is a fund in court but the authority heretofore vested in the Court of Chancery for the granting of counsel fees in causes generally, is hereby superseded."

The practice on allowances in marital actions is fairly well understood and does not call for discussion here. The allowances specified in subdivision (c) in uncontested actions for foreclosure cover the field of former Chancery Rule 149 and do not supersede the statute under which that rule arose, *viz.*, *R. S.* 2 :65–31, except in so far as the statute relates to contested foreclosure causes. As may be inferred from subdivision (d) it was not intended that the rule should supersede statutory provisions then extant (as for example *R. S.* 14 :14–22 and *R. S.* 2 :29–82.11) except as to the authority theretofore vested by statute in the Court of Chancery for

the granting of counsel fees in causes generally, exemplified by *R. S.* 2:29–131 and 132.

The reach of subdivision (b), treating of allowances "out of a fund in court" is less evident. The practice of allowances on the probate and construction of wills remains as heretofore. Ordinarily a will, if probated, brings in a fund over which the courts have jurisdiction; besides which there is legislation, not here disturbed, directed especially toward the probate of wills. *R. S.* 3:2–51.

The words "fund in court" in *Nobile v. Barlletta, supra,* and *Universal Indemnity Insurance Co. v. Callagirone, supra,* were clearly intended to include such cases as came within the classification "administration of trusts" mentioned in the *Stelser case.* There is a fund in court "where the court has jurisdiction over the fund or estate," *In re Fisher, supra,* or "where trust funds in the control of the court are being administered," *Clements v. Clements, supra.* Thus an accounting by the executor, or an administrator or a trustee figuratively brings his fund into court. There may be such a fund when the money is actually in the custody of the court and is the subject of the litigation; also, by analogy, when a litigant by court intercession creates, produces or protects, as in the *Cintas case, supra,* a fund for the benefit of a class of which he is one so that in good conscience the cost of the proceeding should be visited in proper proportion upon the moneys which are thus produced or preserved for the members of the entire class although all did not participate in the litigation.

In the instant case the Court of Chancery had no fund in court so long as the wife's interest was actually a right of inchoate dower in real estate. But the parties by consent deposited moneys in court "subject to the rules" of the court there to remain until disposal of the same by order of the court upon appropriate application by the defendants or either of them. The money was not only in the custody of the court, it was the subject of the pending litigation. We regard the deposit as a fund in court against which an allowance for coun-

sel fee could be made in the discretion of the court in proper instance. The trial court had jurisdiction; but upon the merits of the application the allowance should have been, as it was, denied. The substance of the controversy was the assertion by the wife of an agreement which, as held below and here, did not exist; that being the fact, the law was clear. All that the wife was entitled to was the preservation of an appropriate part of the principal money to produce the income which, if she survives her husband, will be paid to her from the time of her husband's death for the remainder of her life; and about that there was no contest. There is nothing to indicate that, had the trial court considered itself possessed of the power, it would have made an allowance.

The judgment below will be affirmed.

Chief Justice VANDERBILT concurring in the result.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.