327 P.2d 751

John W. MURPHEY and Helen G. Murphey, husband and wife, and Catalina Foothills Estates, a corporation, Appellants Cross-Appellees,

v.

Cleve GRAY, Appellee Cross-Appellant.

No. 6349.

Supreme Court of Arizona.

July 15, 1958.

Boyle, Bilby, Thompson & Shoenhair and William A. Scanland, Tucson, for appellants.

Conner & Jones, Tucson, for appellee.

STRUCKMEYER, Justice.

This quiet title action was brought by Cleve Gray against the defendants John W. Murphey, Helen G. Murphey, his wife, and the Catalina Foothills Estates, an Arizona corporation, for a decree determining that the defendants had no right or interest in thirteen restrictions limiting the use of the Gray property. The court below declared two of the restrictions void. The Murpheys and the Catalina Foothills Estates have appealed from the judgment declaring the two clauses void, and Gray has cross-appealed questioning the propriety of the court's action in failing to annul the other restrictions.

At the trial it appeared that John W. Murphey and his wife Helen had at some time in the past acquired title, either in themselves or in the name of the Catalina Foothills Estates, a corporation wholly owned by them, to the major portions of sections 16, 17, 20 and 21, Township 13 South, Range 14 East, G. & S. R. B. & M. near the city of Tucson, Arizona. The exact time or times of acquisition were not disclosed, nor was it shown whether title was originally taken in the name of the Murpheys or their corporation. The plaintiff acquired his title as the devisee under the last will and testament of one Louise N. Grace who had purchased the property from the Murpheys and the Catalina Foothills Estates.

On June 14, 1930, the defendant John W. Murphey recorded a plat in the office of the County Recorder of Pima County, Arizona, hereinafter referred to as the Catalina Foothills No. 1. By this plat section 17 was sub-divided into 69 irregularly-shaped parcels. Commencing in 1937 and at various times until August of 1945, Louise N. Grace purchased ten parcels of land in section 16 from the Murpheys and their corporation, so that she ultimately became the owner of approximately 225 acres, all of which was then desert, and which substantially remained so to the time of the trial. This parcel of land lies to the east of Catalina Foothills Estates No. 1, but is not contiguous to it. The land to the east of the Grace property is also owned by the Murpheys and it likewise is desert.

The first two parcels purchased by Louise N. Grace in 1937 contained certain restrictions, but in 1939, at the time of the purchase of what is described as the third parcel, a warranty deed was given, signed by defendants Murphey and the Catalina Foothills Estates as grantors. This deed, in addition to conveying title to the third parcel, abrogated the restrictions on the original parcels, and in lieu thereof set up the restrictions which are now the subject matter of this controversy. Similar restrictions were later imposed upon the other parcels subsequently purchased by Louise N. Grace. Sometime between the purchase of the third parcel in 1939 and the start of this lawsuit the defendants, through their corporation Catalina Foothills Estates, caused the land between the Grace property and the Catalina Foothills No. 1 to be platted into the Catalina Foothills Nos. 2 and 3. These plats set up irregularly-shaped parcels of land varying between 1½ and 17 acres; the greater percentage are between 3½ and 7 acres and are similar in size and nature to the Catalina Foothills No. 1. Part of the Catalina Foothills No. 3 extends into section 9, north of section 16, and part of Catalina Foothills No. 2 extends into sections 20 and 21 to the south of sections 16 and 17. The same or similar restrictions that were placed upon the Grace property were placed upon Catalina Foothills Nos. 2 and 3.

The evidence in the trial court was directed almost exclusively to the development of the issue of whether there had been a change in the condition of the lands in this area which would justify the termination of the restrictions. Evidence was introduced which tended to show that the value of the Grace property with the restrictions was $150,000 but that without the restrictions it was reasonably worth $400,000. The trial court adopted the view that "covenants whether running with the land or not will not be enforced when it would be inequitable to do so" and found that there was a change in the character of the neighborhood which justified a decree voiding the restrictions.

■ The two clauses declared void by the court below are those numbered 4 and 7 in the deed to Louise N. Grace. Clause 4 essentially provides that not more than one first-class residence shall be built upon each parcel of land except where a parcel is greater than eight acres, and then not more than two first-class residences shall be built. In principle we have approved the restriction of property to a single-family dwelling house or residence.

"It is a well known fact of which this court cannot but take judicial notice, that many families desire to own homes for residence purposes which shall be distinct and separate from residences occupied by other families, and

that there is a strong and growing tendency everywhere to set aside special districts to be used exclusively for such purposes. * * *" Ainsworth v. Elder, 40 Ariz. 71, 9 P.2d 1007, 1009.

Clause 7 provides for approval by the Murpheys, their architect or agent of plans for new buildings. Equity will enforce the terms of restrictive covenants unless the change in the surrounding area is so fundamental or radical as to defeat or frustrate the original purposes of the restrictions. Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132. The last stated principle is the rule generally prevalent in this country. See Sorrentino v. Cunningham, 111 Ind.App. 212, 39 N.E.2d 473; Abrams v. Shuger, 336 Mich. 59, 57 N.W.2d 445; Chuba v. Glasgow, 61 N. M. 302, 299 P.2d 774; Magnolia Petroleum Co. v. Drauver, 183 Okl. 579, 83 P.2d 840, 119 A.L.R. 1112; Ault v. Shipley, 189 Va. 69, 52 S.E.2d 56; and see the extensive annotations in 4 A.L.R.2d 1111.

The obvious purpose of the restrictions was to establish an area of the highest residential type. The reason for establishing such an area was to benefit the lands retained by the grantors in that they thereby became more valuable as residential sites. Cf. Higdon v. Jaffa, 231 N.C. 242, 56 S.E. 2d 661. There is nothing in the evidence which suggests that the grantors' purpose in establishing an area of the highest residential type is now being frustrated by a fundamental change in character for the only change is from desert to valuable home sites. Cf. Whitaker v. Holmes, 74 Ariz. 30, 243 P.2d 462. Such a similar change occurs in every instance where unimproved property is restricted in its future uses. The benefits to the grantors' land retained still exist now to the same extent as the day the covenants were first written into the deeds. That the plaintiff may be confined to dividing his parcels into areas larger in extent than the defendants' is readily apparent, but this is no reason for removing restrictions for change of conditions when that change must have been contemplated by the covenantor and covenantee at the time the covenants were adopted.

One possible deviation from the general scheme of development which has occurred is a parcel of approximately 80 acres to the north of the Grace property described as Hacienda del Sol which was used by the Murpheys as a girls' school prior to the first purchase by Louise N. Grace. The school was abandoned in 1942 and the property sold in 1944. It is now being used as a guest ranch. This single parcel does not constitute a fundamental or radical departure from the scheme of development, nor could it have been so considered by Louise N. Grace, since she purchased in part after 1944.

The trial court admitted, over repeated objections, the evidence that the removal of the restrictions would enhance

the value of the Grace property. If the trial court gave any weight to this testimony in its determination of the case, such is clearly erroneous for change in values alone does not justify their removal. Continental Oil Co. v. Fennemore, supra, and see Marra v. Aetna Const. Co., 15 Cal.2d 375, 101 P.2d 490; Ockenga v. Alken, 314 Ill.App. 389, 41 N.E.2d 548; Parrish v. Newbury, Ky., 279 S.W.2d 229; Swain v. Maxwell, 355 Mo. 448, 196 S.W.2d 780. We conclude that since these covenants were imposed for the benefit of the land retained by the Murpheys and their corporation and no fundamental change has occurred which would frustrate the original purpose of their adoption, and since the destruction of the restrictions imposed by the clauses in question would permit a development to the obvious damage of defendants, the trial court erred in its judgment voiding those covenants.

■ The plaintiff urges also that Pima County has adopted certain ordinances zoning this area which substantially tend to achieve the same purposes as the restrictions. Zoning in this state is administered by public bodies authorized to change classifications so that even if the present zoning is an adequate substitution for the restrictions, the defendants do not have the same protection which is afforded them by their deeds. Moreover, it has repeatedly been held that zoning cannot constitutionally relieve land of restrictive covenants affecting its use. Ault v. Shipley, supra, cases cited; and Tolar v. Meyer, Fla., 96 So.2d 554; Chuba v. Glasgow, supra; Tower v. Mudd Realty Co., Okl., 317 P.2d 753; Hill v. Ogrodnik, R.I., 113 A.2d 734. Plaintiff, however, presents to this court an alternate theory by which he urges that the judgment of the trial court should be affirmed. It is his position that the restrictions are covenants personal to the Murpheys and that as such, being negative in character, will not be enforced as contrary to public policy. We note that this argument could not in any event apply to clause 7 which is clearly affirmative in nature. The defendants argue that assuming the restrictions are covenants, they are real covenants which run with the land. We do not think it is necessary, however, to determine from the welter of judicial decision whether the covenants are real so as to run with the land or merely personal. Plaintiff cites us to one text authority who advocates the view that negative covenants which do not run with the land tend to restrict its free alienability and are thus against the public policy. The rule generally recognized is set forth in 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1295 without differentiation between covenants personal and real:

"* * * When the owner of land enters into a covenant concerning it, * * * and the land is afterwards conveyed, or sold, or passes to one who has actual or constructive notice of the

covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it, at the suit of the original covenantee * *. It makes no difference whatever, with respect to this equitable liability, and this right to enforce the covenant in equity, whether the covenant is or is not one which in law 'runs with the land.' "

■ The deed to Louise N. Grace provides that the Catalina Foothills Estates, a corporation, and John W. Murphey and Helen G. Murphey, his wife, "by these presents bargain, sell and convey" unto Louise N. Grace. It was signed by both the corporation and the Murpheys. The acceptance of the deed by Louise N. Grace bound her, as the grantee, to the performance of the restrictions as effectively as if she had executed the instrument. Carlson v. Libby, 137 Conn. 362, 77 A.2d 332; Lawson v. Lewis, 205 Ga. 227, 52 S.E.2d 859; Mathis v. Mathis, 402 Ill. 60, 83 N.E.2d 270; Midland Ry. Co. v. Fisher, 125 Ind. 19, 24 N.E. 756; Westrick v. Unterbrink, 90 Ohio App. 283, 105 N.E.2d 885. The deed was recorded in the office of the County Recorder of Pima County, Arizona, and is constructive notice to her successor in interest, Cleve Gray.

■■ Restrictions and limitations which may be put on property by means of stipulations derive their validity from the right which every owner of the fee has to dispose of his estate either absolutely or by a qualified grant, or to regulate the manner in which it shall be used and occupied. Parker v. Nightingale, 6 Allen, Mass., 341, 83 Am.Dec. 632. A purchaser of land with notice of a right or interest in it existing by agreement is bound to do that which his grantor has agreed because it would be unconscionable and inequitable for him to violate or disregard a valid agreement in regard to the estate of which he had notice when he became the purchaser.

■ Contrary to plaintiff's assertion that negative restrictions will not be enforced, the cases disclose that violations are restrained in those situations where equity would otherwise grant relief. Osius v. Barton, 109 Fla. 556, 147 So. 862; Hegna v. Peters, 199 Iowa 259, 201 N.W. 803; Coomes v. Aero Theatre and Shopping Center, Inc., 207 Md. 432, 114 A.2d 631; Riverton Country Club v. Thomas, 141 N.J.Eq. 435, 58 A.2d 89, affirmed 1 N.J. 508, 64 A.2d 347; Appeal of Grille, Inc., 181 Pa. Super. 456, 124 A.2d 659; Higdon v. Jaffa, supra; Oliver v. Hewitt, 191 Va. 163, 60 S.E.2d 1.

■ The transferee of an original party to an equitable servitude is bound by the

servitude if it is intended to bind the land and not merely persons and the burdens of the servitude are intended to run to such transferee. Here the binding obligation as to the land is established in the deed. Clause 13 provides that:

"* * * restrictions shall continue and remain in full force and effect at all times as against the owner of said lot, however title thereto may be acquired, until January 1, 1980, * *."

Since Louise N. Grace at the time of her death in 1954 was over 70 years of age and the restrictions still had 26 years to run, it cannot be supposed other than that it was intended to bind the land and not merely the persons. The phrase in the quoted clause "however title thereto may be acquired" confirms this conclusion beyond argument because it can have reference only to possible future transfers from the person of Louise N. Grace.

■ The record is deficient in that it does not establish who, as between the Catalina Foothills Estates and the Murpheys, actually owned the land at the time it was conveyed to Louise N. Grace. If the Murpheys were the owners or had some interest in the land and thereafter conveyed to the corporation, then the corporation is an assign of the Murpheys, Whittier v. Riley, 104 Neb. 805, 178 N.W. 762, and as such is entitled to enforce the covenants. For this reason, the judgment of the trial court barring and enjoining the Catalina Foothills Estates, a corporation, from claiming any right or title adverse to the plaintiff was error. However, the plaintiff urges us to take judicial notice of the date of the deed by which assertedly the Murpheys acquired title to certain of their lands. We do not think this is within the permissive ambit of the judicial notice doctrine. A court does not take judicial notice of records in the County Recorder's office, but the authenticity thereof must be established by competent evidence. Blake v. Cavins, 25 N.M. 574, 185 P. 374. We point out, moreover, that even if we were to do so, the conveyance itself does not purport to embrace all the lands which the evidence shows as being now owned by the Murpheys.

Plaintiff Cleve Gray has, as stated, cross-appealed. To this cross-appeal defendants have filed a motion to dismiss, urging that those matters raised in plaintiff's cross-assignment of error No. 1 cannot be here determined. The facts established that the decree in this cause, signed, filed and entered on April 30, 1956 contained a provision that plaintiff would recover his costs and reasonable attorney fees if found allowable at the hearing of the cost bill to be later filed by plaintiff. On June 12, 1956, after such hearing, the court ordered that the plaintiff stand his own attorney fees. Plaintiff's notice of appeal, cross-appeal, was filed on July 9, 1956. It was from both

the judgment of April 30th and the order of June 12th. The appeal from the judgment was consequently filed 69 days after the judgment was entered.

By 16 A.R.S. rule 73(b), Rules of Civil Procedure, an appeal must be taken within 60 days from the entry of the judgment or order appealed from. It is settled that a notice of appeal must be filed within the time prescribed, since the failure to file within that time is jurisdictional. Harbel Oil Company v. Steele, 80 Ariz. 368, 298 P.2d 789. It is also settled that a cross-appeal must conform to the rules of court. Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183. However, Gray contends that there was no final judgment to be appealed from until the trial court entered its order on June 12, 1956 disposing of the matters reserved in the decree, namely, costs and reasonable attorney fees. It is provided by rule 58(a), Rules of Civil Procedure, that "* * * the entry of the judgment shall not be delayed for taxing costs." The question thus presented is whether attorney fees are costs.

Section 12–1103, A.R.S.1956 provides that where a disclaimer of interest or right in real property is refused prior to bringing an action to quiet title, "* * * the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court." Plainly, by the terms of this statute, attorney fees in this instance are included as costs. Attorney fees where based directly or indirectly on statute are analogous to and classed in the same category as costs. Katz v. Farber, 4 N.J. 333, 72 A.2d 862. The portion of the notice of appeal directed to the judgment entered on April 30, 1956, was not timely, and we accordingly direct that as much of the cross-appeal as relates to the judgment be dismissed.

The plaintiff's remaining assignment of error is directed to the failure of the court below to allow attorney fees against the defendant corporation and the Murpheys. It is argued that the trial court abused its discretion in not allowing attorney fees to Gray as the prevailing party. In the light of what we have stated in this opinion, we think it is unnecessary to decide this question. Our examination of the law compels us to the conclusion that the trial court erred in entering judgment in favor of the plaintiff Gray and that the judgment must be set aside and a judgment entered in favor of the defendants and each of them. Accordingly, Gray is not the prevailing party and cannot be, under the statute, entitled to recover attorney fees.

It is ordered for the reasons above set forth that the judgment in favor of Cleve Gray be set aside and vacated, and that the court below enter an appropriate judgment in favor of the Catalina Foothills Estates,

a corporation, John W. Murphey, and Helen G. Murphey, declaring the restrictions valid and lawful.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.