565 P.2d 207

**HERITAGE HEIGHTS HOME OWNERS ASSOCIATION, an Arizona Corporation, Appellant,**

v.

**Fred R. ESSER and Margaret J. Esser, his wife, Appellees.**

**No. 1 CA–CIV 3218.**

Court of Appeals of Arizona, Division 1, Department A.

May 24, 1977.

**332**

Martori, Meyer, Hendricks & Victor, P. A., by Jones Osborn II, Phoenix, for appellant.

Fred R. Esser in pro per.

## OPINION

HAIRE, Judge.

This case involves a dispute concerning the removal of a wooden "grapestake" fence constructed in violation of restrictions in a subdivision deed. The plaintiff Heritage Heights Home Owners Association brought suit to enforce the restriction. After a trial based on stipulations, the trial judge entered a judgment ordering the plaintiff Association to grant a five year variance for the offending fence within 30 days or he would dismiss the suit with prejudice. He also denied the Association recovery of its costs and attorneys' fees. The Association appealed both the forced grant of the five year variance and the denial of costs and attorneys' fees. We reverse the trial court's resolution of both of these issues.

Inherent in the judgment that the Association grant a five year delay in the removal of the offending fence is a determination with which both parties now agree, that the deed restriction regarding this type of fence is valid and enforceable. The issues with which we are presented on this appeal are very narrow: granting the validity and enforceability of the restriction in the deed, 1) was the decision of the trial judge that the owner of the offending fence be given five years in which to remove it reasonably supported by evidence in the record; and 2) was there error in the decision of the trial court that each party bear its own attorneys' fees and costs, where

there was an express provision in the deed that the party bringing an action to enforce deed restrictions would recover attorneys' fees and costs if he prevailed.

The case began as an action for an injunction by the plaintiff Association. Heritage Heights Home Owners Association was formed by the developer of a residential subdivision in 1970, with the plan being that every resident of the subdivision would automatically be a member of the Association. Membership rights in the Association, along with attendant privileges and restrictions, were embodied as restrictive covenants and imposed on every conveyance of the property.

The Home Owners Association remained under the control of the developer from 1970 through 1972, while the lots were originally being sold. Violations of the deed restrictions, usually minor in nature, were not pursued during these early years. In 1972 the individual homeowners took control of the Home Owners Association and began a program of enforcement, attempting to eliminate violations already existing and to prevent further violations.

Pursuant to this policy, the Association sent newsletters in March, April and July of 1973 reminding the residents of the restrictions. It also proceeded to correct already existing violations by various means, including negotiation and instigation of legal proceedings where necessary. It was stipulated that the Association had granted and would grant permanent variances for those fences, such as combination brick and masonry or wrought iron and block fences, which it felt substantially met the purposes for which the deed restrictions were imposed. For other fences, such as the wood "grapestake" fence in question, which, unlike this fence, had been constructed before the Association began its program of enforcement, the usual policy was to allow the homeowner a five year variance within which to remove the offending fence.

Defendant Esser began the construction of his wooden "grapestake" fence in October of 1973, after the three newsletters had been sent. On October 15, 1973, one of the

members of the Board of Directors of the Association noticed the beginning of the construction and contacted Mr. Esser, informing him that such a fence would be in violation of deed restrictions. Although the board member requested that Mr. Esser desist from construction, he refused, and completed the fence.

After some preliminary delays, the matter was tried by stipulation, with a resulting judgment in essence as above described: that the plaintiff must give the defendants five years in which to remove the fence, and no costs or attorneys' fees to be awarded to the plaintiff Association.

■ When a grantee accepts a deed containing restrictions, he assents to these restrictions and is bound to their performance as effectively as if he had executed an instrument containing them. *Murphey v. Gray,* 84 Ariz. 299, 305, 327 P.2d 751, 755 (1958); *Fort Dodge, Des Moines & Southern Railway v. American Community Stores Corp.,* 256 Iowa 1344, 131 N.W.2d 515, 521, 522 (1964).

■ The enforcement of such restrictions is by means of an injunction, in which the trial court has the power to structure the remedy so as to do equity between the parties. However, there is absolutely nothing in the record in the instant case which supports the trial judge's grant of what amounts to a five year postponement for the enforcement of this particular provision. The policy of the Association to allow a five year period for removal of wood fences which had been built before it began its program of notification and enforcement does not appear in the stipulations on which the case was tried, and should not have been considered by the trial court. Even if it were, however, the distinction made by the Association between those homeowners and Mr. Esser, who does not deny that he began and completed his fence after he had actual knowledge that it would violate the deed restrictions and that such restrictions would be enforced, is justifiable, fair, and reasonable. There is nothing arbitrary or

inequitable in the Association's temporary policy of allowing a certain period for removing violations to those who had constructed them in good faith, without knowledge, while requiring immediate removal by another who built with full knowledge and at his own risk. Clearly, if the Association has to allow every person who purposely violates the restrictions five years in which to remove an offending structure, the entire development plan for which the restrictions were imposed would be speedily defeated. This would operate to the detriment of all the homeowners, including Mr. Esser, who bought and built there in reliance on the standards as expressed in the deed restrictions. *Continental Oil v. Fennemore,* 38 Ariz. 277, 299 P. 132 (1931). Once this particular restriction was found to be valid and enforceable, we can perceive no equitable circumstances why Mr. Esser should not be required immediately to remove the offending fence.

The covenant requiring a violating party to pay the costs and attorneys' fees of a prevailing party in a successful enforcement action was embodied as a provision in the deed restrictions:

"In the event the major builder, or GOLDEN HERITAGE CORPORATION, or the Association, employs an attorney, or attorneys to . . . enforce compliance with or specific performance of the terms and conditions of this Declaration, the owner, owners and parties against whom the action is brought shall pay all attorneys' fees and costs thereby incurred by any such enforcing party prevailing in any such action."

■ By accepting the deed, Mr. Esser became contractually bound to abide by its provisions. *Murphey v. Gray, supra.*

■ The rule is that "Contracts for payment of attorneys' fees are enforced in accordance with the terms of the contract." 25 C.J.S. Damages § 50c; *Kammert Brothers Enterprises v. Tanque Verde Plaza Co.,* 4 Ariz.App. 349, 370, 371, 420 P.2d 592, 613 (1966).[1] Having found the restriction valid

1. Vacated, result as to attorneys' fees affirmed, 102 Ariz. 301, 428 P.2d 678 (1967).

and having required its enforcement, the trial court was obliged by the contract to assess attorneys' fees and costs in favor of the enforcing party.

The cases of *Davis v. Davis*, 9 Ariz.App. 49, 449 P.2d 66 (1969) and *Schwartz v. Schwerin*, 85 Ariz. 242, 336 P.2d 144 (1959), cited by appellees, are not in point in that they were not concerned with contractual provisions for attorneys' fees. The holding of *Gilliland v. Rodriquez*, 77 Ariz. 163, 268 P.2d 334 (1954) is only that no recovery of attorneys' fees may be had where the amount recovered on the contract which contained the provision for attorneys' fees is less than the amount due on a counterclaim. Recovery of all costs and attorneys' fees, including those on appeal, must therefore be granted to the Association.

Appellees contend that this court is without jurisdiction of this appeal because, after the trial court had required the plaintiff Association to join other defendants and threatened to dismiss the claim with prejudice if an amended complaint joining these other defendants within 30 days were not filed, it unilaterally and without notice to defendants allowed to plaintiff an extension of time in which to file the above-mentioned amended complaint. Plaintiff then successfully urged the court to reconsider its ruling.

Rule 6 of the Arizona Rules of Civil Procedure clearly allows such an extension without notice to the other party:

"6(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."

We can perceive no error in this grant of additional time.

This matter is remanded to the trial court for the issuance of an injunction requiring the immediate removal of the offending fence, and for the determination and assessment of costs and attorneys' fees, including attorneys' fees on appeal.

NELSON, P. J., and DONOFRIO, J., concurring.