604 P.2d 1136

David P. and Josephine DUFFY, Pat and Mary McGee, William and Wanda Mir, Plaintiffs/Counter-Defendants-Appellants,

v.

SUNBURST FARMS EAST MUTUAL WATER & AGRICULTURAL COMPANY, INC., an Arizona corporation, Defendant/Counter-Claimant-Appellee.

No. 1 CA–CIV 4345.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 8, 1979.

Rehearing Denied March 20, 1979.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for plaintiffs/counter-defendants-appellants.

Christopher D. C. Hossack, Tempe, for defendant/counter-claimant-appellee.

OGG, Chief Judge.

In this appeal we must determine if the appellants/plaintiffs homeowners are legally released from certain restrictive covenants requiring the payment of fixed water assessments to the appellee/defendant Sunburst Farms East Mutual Water & Agricultural Company, Inc. The three sets of appellant homeowners each own land in three subdivisions of Sunburst Farms East (No. 3, No. 4 and No. 7). The issues presented as to each subdivision and each set of homeowners are the same, and the resolution of one applies to all.

The homeowners all purchased lots in Sunburst Farms East, which was a land

development designed to have tract homes in a rural farm setting. Deed restrictions were placed on all lots under a document designated as "Declaration of Covenants, Conditions and Restrictions". The pertinent disputed restriction required all lot buyers to become members of the appellee water company, which required a prospective homeowner to pay the fees and assessments of the water company, whether or not the homeowner wanted to have the water company furnish water. The water company is an incorporated homeowner's association that not only furnishes water but also is responsible for maintaining common bridle paths and providing tillage and other agricultural services to the owners. After the lots were sold and the water company was in operation, a number of people in each subdivision decided they did not want to take the water company's water or to pay its fees. The homeowners in this suit joined with others and signed an Amended Declaration of Restrictions before a notary public and had it recorded with the Maricopa County Recorder. The amendment did away with the requirement of mandatory membership in the water company, terminated the requirement to pay water fees, and eliminated the power of the water company to place liens for unpaid fees. The water company filed and recorded a lien upon the land belonging to each delinquent homeowner. The plaintiff homeowners filed three quiet title actions, which are consolidated in this appeal, requesting the trial court to remove the liens. In each case the water company answered, claiming the liens were valid, and filed counterclaims against the plaintiffs for the unpaid water bills covered by the liens, plus attorney fees and costs. All parties filed motions for summary judgment. The trial court denied the motions of the homeowners and granted the water company's motions. The homeowners now appeal.

The trial court made the following pertinent finding of fact:

4. That in each of the respective cases, the group of homeowners so attempting to amend the Declaration did not follow the provisions of the Association's Bylaws as said Bylaws relate to notice; and further, the Amended Declaration was approved by less than a majority of owners/members entitled to vote under the terms of said Bylaws; and as a result, the Amended Declaration was improperly enacted and approved and is null and void.

Section 9. of the Bylaws reads:

The owner or owners of any parcel or parcels of real property located in any irrigated Sunburst Farms East subdivision shall be entitled to one vote, as long as said member is in good standing, "Good standing" shall be defined as current payment in full of all obligations due the Sunburst Farms East Mutual Water and Agricultural Company by said owner.

It is undisputed in each case that if only paid-up members in good standing had voted, there would not be a majority of owners signing in favor of the Amended Declaration terminating the water obligations.

The dissatisfied homeowners contend that one does not have to be a paid-up member in good standing in the homeowner's association before a valid vote can be cast, and that in each case there was a majority of the homeowners in favor of the Amended Declaration. They argue that Article IV, Section 3, of the original Declaration governs the restrictive covenants to the real property, and that the Bylaws of the homeowner's association have no relevance to the issues in this case.

Article IV, Section 3, reads:

The foregoing restrictions and covenants run with the land and shall be binding upon all parties and all persons claiming under them until January 1, 1998, *unless otherwise amended or revoked by vote of a majority of the then owners of lots in SUNBURST EAST FOUR.* (Emphasis added).

It is the position of these homeowners that Article IV contains no formal format for a voting procedure, and that they as owners were not required to give notice of the vote or hold any meeting of all homeowners prior to obtaining the signatures in this case.

■ The appellee water company argues that as an incorporated homeowner's association, any change in the composition or operation of the association that materially affects the property rights of all members must be accomplished by following the procedures and bylaws of such association. In accepting their deeds, the owners in the Sunburst East subdivisions accepted the existence of the original Declaration and are bound by the restrictions. *Murphey v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); *Heritage Heights Home Owners Ass'n v. Esser*, 115 Ariz. 330, 565 P.2d 207 (App. 1977). The water company agrees that the homeowners by following correct procedures have the right to modify or cancel any of the restrictive covenants. *See* 7 G. Thompson, Real Property § 3173 at 202 (J. Grimes repl. 1962).

A pertinent part of Article III of the original Declaration reads:

The record owner of equitable title (or legal title if equitable title has merged) of any parcel or parcels of real property located in any irrigated SUNBURST FARMS EAST development shall automatically become a member of the Association, . . . Ownership of a parcel shall be the sole qualification and criteria for membership.

Article III, paragraph 3, further provides each owner shall have one membership in the association "which membership shall be subject to all of the provisions of the Association's Articles of Incorporation, *By-Laws*, Resolutions, and these Restrictions, as now in effect or duly adopted and amended." (Emphasis added).

It is our opinion in reviewing the entire Declaration that under Article III, one cannot become a member without being an owner, and one cannot become an owner without being a member.

The pertinent portion of Article I of the Bylaws reads:

Section 1. *Membership.* Record owners of equitable title (or legal title, if equitable title has merged) of any parcel or parcels of real property located in any irrigated subdivision of the Sunburst Farms East Development shall automatically be members of the corporation . . . Membership in the corporation shall be mandatory whether or not an owner takes advantage of the facilities offered by the corporation.

The Bylaws further provide how annual and special meetings are to be called, and Section 5 sets down how notice must be given as follows:

*Notice of Meetings.* Notices of every annual or special meeting of members, stating the time and place where such meeting is to be held, shall be given by serving a copy of such notice personally or by ordinary mail to each member not less than five (5) days prior to each annual meeting and not less than two (2) days prior to each special meeting.

In the final analysis, the homeowners attempt to isolate Article IV, Section 3 of the original Declaration. As owners, dealing with covenants running with the land, they contend they need only a majority of owners to sign the Amended Declaration and that the remaining provisions in the Declaration and Bylaws have no application to the issue in this case.

■ In our opinion, the homeowners cannot pick and choose which part of the original Declaration they wish to follow and ignore the rest. It is basic contract law that in interpreting a document we must examine the whole document and each part must be read and interpreted in connection with all other parts. *See Lawrence v. Beneficial Fire & Casualty Insurance Company*, 8 Ariz.App. 155, 159, 444 P.2d 446, 450 (1968). The homeowners were bound by the entire Declaration and Bylaws, and the attempted Amended Declaration is therefore void. No notice of any kind was given to some of the owners that a vote was to be taken, and no meeting was called under the procedures established in the Bylaws.

We also agree with the finding of the trial court that there were insufficient signatures to constitute a majority when only the signatures of members in good standing are counted.

The owners clearly have the right to change the restrictive covenants provided they follow the procedures set forth in the Declaration and the Bylaws. They failed to do so and the Amended Declaration is null and void.

Affirmed.

SCHROEDER, P. J., and JACOBSON, J., concur.