604 P.2d 1124

**David P. and Josephine DUFFY, Pat and Mary McGee, William and Wanda Mir, Appellants,**

v.

**SUNBURST FARMS EAST MUTUAL WATER & AGRICULTURAL COMPANY, INC., an Arizona corporation, Appellee.**

**No. 14287–PR.**

Supreme Court of Arizona,
In Banc.

Nov. 28, 1979.
Rehearing Denied Jan. 8, 1980.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for appellants.

Christopher D. C. Hossack, Tempe, for appellee.

HOLOHAN, Justice.

Actions to quiet title to real property were brought by the three sets of appellant homeowners as plaintiffs below, to remove liens placed upon their property by appellee homeowners' association. In respect to each action, appellee-defendant counterclaimed for an amount claimed as due and owing and secured by the recorded lien. The actions were consolidated below by the trial court. The lower court found the liens to be proper and valid and granted appellee's motions for summary judgment. From that decision appellants appealed and the Court of Appeals affirmed, 124 Ariz. 425, 604 P.2d 1136 (App.1979). Appellants petitioned for review and we granted review under A.R.S. § 12–120.24 and Rule 23 of the Rules of Civil Appellate Procedure, 17A A.R.S. The opinion of the Court of Appeals is vacated.

The circumstances, applicable documents and arguments are the same as between each set of appellants and the appellee, so that appellants will be treated collectively in this opinion. The issue presented is whether appellants effectively revoked certain restrictive covenants applying to real property situated in a residential development.

Appellant homeowners each own land located either within Subdivision No. 3, No. 4 or No. 7 of Sunburst Farms East development, Maricopa County, Arizona. For each subdivision of Sunburst Farms East, deed restrictions were placed on all lots and embodied within a recorded instrument entitled "Declaration of Covenants, Conditions and Restrictions" (hereinafter Declaration). The Declaration is composed of four "Articles." Article III sets forth the restrictions at issue whereby every record owner of any parcel of real property "shall automatically become a member of the [appellee] Association." The stated purpose of the association is to supply "service to its members at the most economical rates to help preserve the beauty and aesthetic value of the overall irrigated SUNBURST FARMS EAST subdivision." The "service" referred to consists of furnishing irrigation water, providing tillage and other agricultural services and maintaining common bridle paths.

The association, pursuant to Article III, is empowered to require payment of a fixed assessment by all members for its services. The fixed assessment becomes a lien upon a member's lot until fully paid. Also provided within the scheme of this article, members are obligated to pay assessments regardless of whether they take irrigation water or do not make use of the services provided by the association.

Appellant homeowners sought to change the aforementioned provisions in the Declaration to make association membership a wholly voluntary right within the discretion of each record owner and to remove the association's power to impose assessments and liens upon homeowners. To effect these changes, an Amended Declaration was prepared which varied from the original Declaration only in respect to the desired changes to be made in Article III. A vote was taken by which a majority of owners of lots voted to amend the original

Declaration. The Amended Declaration was then signed by those who had voted and recorded with the statement that it revoked and rendered void the original Declaration. After the Amended Declaration was recorded, appellants did not pay any more of the association's assessments. In response, the association placed liens upon their property which gave rise to appellants' actions to quiet title.

The trial court in its Findings of Fact and Judgment determined:

"4. That in each of the respective cases, the group of homeowners so attempting to amend the Declaration did not follow the provisions of the Association's Bylaws as said Bylaws relate to notice; and further, the Amended Declaration was approved by less than a majority of owners/members entitled to vote under the terms of said Bylaws; and as a result, the Amended Declaration was improperly enacted and approved and is null and void."

The above finding by the lower court is based upon appellee's argument that the original Declaration requires that the bylaws of the association be followed, in that Article III, paragraph 3 recites:

"The record owner of equitable title (or legal title if equitable title has merged) of each unit shall be entitled to one membership in the Association, for himself and his family residing in the unit, which *membership shall be subject to all of the provisions of the Association's* Articles of Incorporation, *By-Laws,* Resolutions, and these Restrictions, as now in effect or duly adopted and amended." (Emphasis added.)

The notice provisions to which the court's finding refers are contained in Article I, Section 5 of the association's bylaws, which states:

"*Notice of Meetings.* Notices of every annual or special meeting of members, stating the time and place where such meeting is to be held, shall be given by serving a copy of such notice personally or by ordinary mail to each member not less than five (5) days prior to each annual meeting and not less than two (2) days prior to each special meeting. If mailed, such notice shall be directed to the member at his address as it appears in the membership book, unless he shall have filed with the Secretary of the corporation a written request that notices intended for him be mailed to some other address."

Article I, Section 9 of the bylaws provides:

"*Voting.* The owner or owners of any parcel or parcels of real property located in any irrigated Sunburst Farms East subdivision shall be entitled to one vote, as long as said member is in good standing. 'Good standing' shall be defined as current payment in full of all obligations due the Sunburst Farms East Mutual Water and Agricultural Company by said owner."

Since a substantial number of owners voting in favor of the Amended Declaration were not current in their payments due the association, the court determined, in reliance upon Section 9, that the Amended Declaration was approved by less than a majority of those entitled to vote and was therefore "improperly enacted and approved and is null and void."

Appellants argue that in their effort to change Article III of the original Declaration, they proceeded as provided in Article IV of that same document. Section 3 of that article provides in pertinent part:

"The foregoing restrictions and covenants run with the land and shall be binding upon all parties and all persons claiming under them until January 1, 2003, *unless otherwise amended or revoked by vote of a majority of the then owners of lots* in SUNBURST FARMS EAST [THREE, FOUR or SEVEN]." (Emphasis added.)

The appellants therefore argue that the method of changing the Declaration, including those restrictions contained in Article III relating to association membership, was provided in the Declaration, itself. No requirement of a meeting, of notice nor of being current in payments due the association in order to be eligible to vote were

therein specified; a "vote of a majority of the then owners of lots" was all that was required to amend or revoke the original Declaration.

In further support of their position, the appellants assert that a distinction is made between "owners" and "members" since they are separately defined in the Declaration. In Article I, the definitional section of the document, "member" is defined as "every person or entity who holds membership in the Association," and "owner" is defined as "the record owner . . . of any lot which is part of the properties." Appellants therefore contend that the Declaration itself states that owners and members are not the same and accordingly, one need only be an owner in order to vote upon amending or revoking the Declaration, as provided under its terms.

■ By accepting deeds to the Sunburst Farms East subdivision lots, appellants became bound by the restrictions set forth in the Declaration which made conveyance subject to such restrictions. *Murphey v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); *Heritage Heights Home Owners Association v. Esser*, 115 Ariz. 330, 565 P.2d 207 (App. 1977). As a part of those restrictions, appellants were required to become members in the association. We determine, however, that appellants have successfully and properly escaped from forced membership in the association since the very instrument which created that requirement also created the right and the method by which to amend or revoke the restrictions; "by vote of a majority of the then owners."

■ The words in a restrictive covenant must be given their ordinary meaning. *Riley v. Stoves*, 22 Ariz.App. 223, 526 P.2d 747 (1974). The words themselves, within a restrictive covenant are the primary evidence of the meaning of such words. *Parks v. Richardson*, 567 S.W.2d 465 (Tenn.App.), *cert. denied* (Tenn. Supreme Ct. Nov. 7, 1977). The meaning of the phrase "a majority of then owners of lots affected thereby," as used in a restrictive covenant to specify the procedure by which such restrictive covenants affecting certain lots could

be changed, was at issue in *Cieri v. Gorton*, 587 P.2d 14 (Mont.1978). Speaking to that issue, the Supreme Court of Montana stated:

"As to whether the phrase has a special meaning in common usage or whether it is ambiguous, though Montana authority on point is lacking, other jurisdictions construing the phrase have found it to be clear and unambiguous and to mean what it says, namely, a majority of owners." *Cieri*, 587 P.2d at 17.

The court in *Cieri, supra*, determined that the phrase a "majority of then owners of lots" in the provision for changing the original restrictive covenants, required the consent of a majority of owners of lots rather than owners of a majority of the lots to amend the covenants. In *Cieri, supra*, the court was thus not called upon to decide the meaning of the phrase at issue in the restrictions vis-a-vis the bylaws of an entity referred to in another part of the restrictions. Although the question presented in the Montana case was different than that in the case presented to us, the provisions for changing the original restrictions are exactly the same. We also determine that the phrase used in Article IV Section 3 of the Declaration is clear, unambiguous and means exactly what it says; the restrictions embodied within the Declaration may be revoked or amended by vote of a majority of the then owners of lots.

■ The appellee argues that the appellants have attempted to isolate a single provision of the Declaration, removed from the total context and surrounding circumstances. This court has previously recognized that in determining the meaning of restrictive covenants, the surrounding circumstances will be looked to as well as the meaning of particular words. *Whitaker v. Holmes*, 74 Ariz. 30, 243 P.2d 462 (1952); *Ainsworth v. Elder*, 40 Ariz. 71, 9 P.2d 1007 (1932). When the meaning of a covenant is reasonable and unambiguous, however, there is no need to seek further clarification outside its language. *Shea v. Sargent*, 499 S.W.2d 871 (Tenn.1973). As is the case with clear and unambiguous agreements (see

*Grossman v. Hatley*, 21 Ariz.App. 581, 585, 522 P.2d 46, 50 (1974), *rev. den.*, 1974, and cases cited therein), in the absence of ambiguity, restrictive covenants will be enforced according to their terms. *Gunnels v. North Woodland Hills Community Association*, 563 S.W.2d 334 (Tex.Civ.App.1978). Even if ambiguity is present, any ambiguity in terms of the restrictive covenant or intent of the parties will be resolved against the restriction. *Parks v. Richardson, supra.* Also, as stated in *Grossman v. Hatley*, 21 Ariz.App. at 583, 522 P.2d 46:

> "Restrictive covenants are to be strictly construed against persons seeking to enforce them and any ambiguities or doubts as to their effect should be resolved in favor of the free use and enjoyment of the property and against restrictions. *Palermo v. Allen*, 91 Ariz. 57, 369 P.2d 906 (1962); *R & R Realty Co. v. Weinstein*, 4 Ariz.App. 517, 422 P.2d 148 (1966)."

Moreover, when the language of a restrictive covenant is unclear, it should be construed in favor of the free use of land. *O'Malley v. Central Methodist Church*, 67 Ariz. 245, 194 P.2d 444 (1948); *Carter v. Conroy*, 25 Ariz.App. 434, 544 P.2d 258 (1976).

The only provisions in the terms of the original Declaration which refer to the association's bylaws, are those which make the appellant homeowners members of the association and their membership subject to the bylaws. Those provisions cannot be enlarged so as to require that the notice and voting procedures of the association's bylaws be followed, in the face of clear and unambiguous terms expressed in the restrictions themselves providing for their amendment or revocation.

We therefore find that the appellants effectively revoked the original Declaration and that the Amended Declaration is valid. The trial court erred in finding that the Amended Declaration is null and void for reason of being improperly enacted and approved. Appellants were legally released from the obligation of paying assessments and charges to the appellee for its services,

incurred from the point in time after they recorded the Amended Declaration.

The judgment of the trial court is reversed, and the cases are remanded to the superior court for further proceedings consistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.