## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01815-SCT

*JOHNNIE RUTH HUDSON, JOEL K. HUDSON AND HELEN OGLETREE*

*v.*

*MORRISON HEIGHTS BAPTIST CHURCH*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/1999 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEE: | JOHN H. PRICE, JR. |
| | JAMES FREDERICK AHREND |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 04/05/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/26/2001 |

**BEFORE McRAE, P.J., COBB AND DIAZ, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Residents of Morrison Heights Subdivision sought to have Morrison Heights Baptist Church declared in civil contempt for violating an injunction which restricted the use of church property located within the subdivision, and further sought to have amendments to the restrictive covenants governing the subdivision declared invalid. Because the amended restrictive covenants were adopted by the owners of a majority of the lots and are not violative of public policy they are valid, though they are limited by the zoning laws where the laws are more restrictive than the covenants. The judgment of the Hinds County Chancery Court is, therefore, affirmed.

## PROCEDURAL HISTORY

¶2. In 1988, residents of Morrison Heights Subdivision filed suit against Morrison Heights Baptist Church, which is located adjacent to the subdivision and owns several lots therein. The residents claimed certain lots were being used in violation of the restrictive covenants that govern the subdivision. This action resulted in an Agreed Judgment Granting Permanent Injunction, entered by the Hinds County Chancery Court on July 5, 1988.

¶3. The covenants at issue were subsequently replaced by amended restrictive covenants on February 9, 1994. On December 2, 1997, the City of Clinton re-zoned the church property from residential to quasi-public facility at the behest of the church. Thereafter, Johnnie Hudson, Joel Hudson, and Helen Ogletree, owners of lots 4, 10, and 12 in the subdivision, filed a complaint to enforce the 1988 injunction and hold the church in contempt. The Hinds County Chancery Court found that the church was not in violation of the injunction and that the restrictive covenants had been properly amended. Though the court applied the wrong legal standard, we affirm its judgment to the extent that it comports with this opinion.

## FACTS

¶4. The developers of Morrison Heights Subdivision ("Subdivision") recorded restrictive covenants governing the subdivision on February 9, 1959. The Subdivision consisted of twelve lots. Three years later, in 1962, Lot 1 of the Subdivision was granted a waiver from the covenants, which allowed it to be developed commercially. Morrison Heights Baptist Church ("MHBC") is located adjacent to Lot 11, across the street from the other lots.

¶5. Prior to 1988, MHBC purchased lots 5, 7, and 11 of the Subdivision. Some residents of the Subdivision believed that MHBC was using its lots in a manner inconsistent with the restrictive covenants and zoning laws. The aggrieved residents filed a Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against MHBC, which resulted in an Agreed Judgment Granting Permanent Injunction, entered by the trial court on July 5, 1988.

¶6. The restrictive covenants adopted in 1959 stated that they would be binding for an initial period of 25 years and that they would automatically renew every ten years "unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part."

¶7. The covenants were due to renew for another ten years on February 9, 1994. In 1993, MHBC purchased lots 6 and 8, giving it ownership of five of the eleven lots in the subdivision, which were zoned for residential purposes only. In 1991, Edward and Mary McDonald sold a strip of land in Lot 2, measuring approximately 10 feet by 61 feet, to Al Ashford in violation of a covenant restriction preventing subdivision of the lots. Prior to the 1994 renewal date, MHBC, Edward and Mary McDonald, Al Ashford, and David and Dorothy Hopkins, owners of lot 9, signed and filed Amended Restrictive Covenants. The owners of lots 3, 4, 10, and 12 voted against the amended covenants.

¶8. After the new covenants were adopted, the McDonalds further subdivided their lot, selling most of it to MHBC, except for the portion previously sold to Al Ashford, and a small piece the McDonalds reserved for themselves. In 1995, MHBC purchased lots 9 and 3. Thus in 1995, MHBC owned lots 3, 5, 6, 7, 8, 9, 11, and a portion of lot 2.

¶9. MHBC requested the City of Clinton to re-zone its property as a quasi-public facility, which was granted on December 2, 1997. On that same day, Johnnie Hudson, Joel Hudson, and Helen Ogletree, owners of lots 4, 10, and 12 (the appellants), filed a Complaint to Enforce Agreed Judgment Granting Permanent Injunction and to Hold Violators in Contempt. The residents claimed the MHBC violated the injunction by parking in the yards of the properties, by allowing the buildings to deteriorate, thereby adversely altering the external appearance of the properties, and by applying for the zoning ordinance variance. The trial court found that MHBC was not in violation of the injunction and that the covenants had been properly amended.

## DISCUSSION

### I. Whether the chancery court erred in finding that Morrison Heights Baptist Church did not violate the 1988 injunction.

¶10. The provisions of the injunction relevant to the case at bar permanently enjoin and restrain the church, its officer, agents, employees and members from the following:

1. Lot 11: "(a) paving and parking on any portion of said property other than the currently existing driveway, (b) adversely altering the external residential appearance and character of said property . . . "

2. Lots 5 and 7: "(a) paving and parking on any portion of said property other than the currently existing driveway, (b) adversely altering the external residential appearance and character of said property, including the posting of signs thereon . . . "

¶11. The Appellants urge that the house on Lot 11 has been in violation of the provision that prevents MHBC from "adversely altering the external residential appearance and character of the property." Witnesses for the residents testified that this house had not been painted in nine years, needed repairs to rotten wood along the eave and roof line, that "window screens had fallen from the windows and were left in the front yard," that signs were displayed on the property, stacks of logs were left in the backyard for months, and that the church constructed a parking lot near this lot and did not erect a privacy fence.

¶12. The injunction does not prevent the posting of signs on Lot 11, and the Appellants have not demonstrated that the signs to which they refer rise to the point of detrimentally altering the character of the property. They also complain of the failure to erect a privacy fence to hide a nearby parking lot, which is not a term of the injunction. Appellants do not allege that the parking lot was constructed on Lot 11, which would violate the injunction.

¶13. Whether the failure to make timely repairs, replace window screens and remove stacks of logs from the back yard rise to the level of adversely altering the appearance and character of the property is a question of fact, to be resolved by the fact finder. The chancery judge had before him the testimony of numerous witness, as well as Trial Exhibit 14, which contained sixty photographs of the lot and house in question. We cannot say that he lacked substantial evidence on which to base his decision.

¶14. The Appellants also argue that MHBC violated the injunction as to Lot 7 because "church maintenance vehicles, trucks, jeeps, tractors, trailers, and yard equipment were parked in the back yard." The photographs in the record merely show a large lawnmower parked under an overhang on the back porch and a flatbed trailer parked next to a storage house at the rear of the property line. These do not support the Appellants' contention.

¶15. Appellants further argue that the house on Lot 5 was left in a state of disrepair so as to constitute an adverse alteration in the character and appearance of the property. They claim that the roof was in "very poor condition" with "rotten soffit and fascia boards all around the home," that the tree line bordering the property was untrimmed, that a chain link fence on the rear border of the property had partially fallen down but had not been removed, that a rear portion of the lot had become overrun with weeds and brush, that a door to the crawlspace under the house, located in the rear of the house, was left open, that "the lights were often left on during the week even though no one was there and the front door was frequently left open." The Appellants also complain of "sparse" landscaping, that handmade Sunday School signs were pasted on the front windows and doors, and that a large barbeque grill was parked in the front and back yards at various times.

¶16. The photograph shows that, while in need of repair, the roof on the house of Lot 5 hardly appears to be in the deleterious condition of which the residents complain. They further argue that the rear portion of the lot was overrun with weeds and brush, creating a nuisance and a breeding ground for snakes and

opossums. The area that is overgrown appears to lie on the other side of the rear property line of Lot 5, underneath a row of power lines.

¶17. The posting of signs that adversely alter the external appearance and character of Lots 5 and 7 is clearly forbidden by the injunction. However, the photograph exhibits in the record do not reveal Sunday School signs on the doors and windows of the house located on Lot 5. Furthermore, if sparse landscaping, leaving the lights on, the doors open, and parking a large barbeque grill on the lot constitute an adverse alteration to property, we could expect an explosion of this litigation in Mississippi.

¶18. This is not to say that a culmination of factors, which individually would not rise to the level of adverse alteration, taken together could not cumulatively constitute an adverse alteration of the character of the property. However, this determination was within the discretion of the chancellor, whose decision was based on substantial evidence.

¶19. The Appellants further argue that cars were parked in the streets in front of the church properties and that they were "parked all over the front yards to the point that they looked like a used car lot." By its distinct terms, the injunction only forbids parking in the yards of lots 5, 7, and 11. The photographs in the record reveal only two instances where cars were parked in the yard of Lot 5, and one in Lot 7. Furthermore, the chancellor found as follows: "Plaintiffs gave clear testimony as to yard parking in less than four instances, and could not clearly state that these instances involved cars of [church members] . . . or visitors of the church, to which the injunction does not apply." Nothing in the injunction prevents parking in the street. As long as the area has not been marked as a no parking zone, there is nothing wrong with parking along the curb of a public residential street.

¶20. Finally, the Appellants argue that MHBC violated the injunction by asking the City of Clinton to re-zone its property to that of a quasi-public facility, which the City did on December 2, 1997. However, nothing in the language of the injunction prevents the parties to it from seeking to have it modified or set aside, nor does re-zoning the property violate the injunction. "[A] valid restriction upon the use of property is not terminated, superceded, or nullified by the enactment of a zoning ordinance . . . and the rezoning of property for purposes other than residential does not supercede the original plat restrictions so as to prevent the enforcement of such restrictions." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 242 (1995).

¶21. The findings of a chancellor should not be disturbed unless the chancellor was manifestly wrong in interpreting the facts or applied an erroneous legal standard. ***Goode v. Village of Woodgreen Homeowners Ass'n***, 662 So.2d 1064, 1071 (Miss. 1995) (collecting citations). Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions. *Id.* Because substantial evidence exists to support the chancellor's finding that the 1988 injunction has not been violated, the judgment of the chancery court should be affirmed.

> **II. The chancery court erred in finding that the restrictive covenants could be amended based on one vote per lot, rather than one vote per owner. However, this error is harmless in this case because the result is the same using either method.**

¶22. The language of the restrictive covenants that originally governed Morrison Heights Subdivision dictated that they were to remain unchanged for the first twenty five years and would renew automatically at ten-year intervals thereafter "unless an instrument signed by a majority of the then owners of the lots has

been recorded, agreeing to change said covenants in whole or part." In the case at bar, the restrictive covenants were validly amended because a majority of the lot owners agreed to and properly recorded the change.

¶23. The chancellor incorrectly held that the phrase "a majority of the then owners of the lots" indicated one vote per lot, rather than one vote per lot owner. This Court reviews all questions of law de novo. *Seymour v. Brunswick Corp.*, 655 So.2d 892, 895 (Miss .1995) (citing *Harrison County v. City of Gulfport*, 557 So.2d 780, 784 (Miss.1990)). We now hold that "a majority of the then owners of the lots" means one vote per owner, not one vote per lot as the chancellor held. However, this error will not affect the outcome of this case, as the result is the same under either approach.

¶24. Jurisdictions have split in interpreting the phrase "a majority of then owners of lots." The Arizona Supreme Court observed that "[t]he words in a restrictive covenant must be given their ordinary meaning." *Duffy v. Sunburst Farms East Mut. Water & Agric. Co.*, 604 P.2d 1124, 1127 (Ariz. 1980) (citation omitted). That court went on to hold that "a majority of then owners of lots" indicated that each owner would get one vote, rather than one vote per lot. *Id.*

¶25. The Montana Supreme Court reached the same conclusion in *Cieri v. Gorton*, 587 P.2d 14, 16 (Mont. 1978). In that case, the restrictive covenants provided for their amendment "by a majority of the then owners of the lots." *Id.* at 15. The covenants were purportedly amended by two people who owned 69 of the 110 lots in the subdivision. They argued that the language should be interpreted to allow one vote per lot, rather than per owner. The Montana court disagreed, holding that the words would be given their "ordinary" meaning, rather than a "strict legal meaning." *Id.* at 16. *See also French v. Diamond Hill-Jarvis Civic League*, 724 S.W.2d 921, 923 (Tex. Ct. App. 1987).

¶26. The covenants that originally governed Morrison Heights Subdivision were not eligible for amendment until twenty five years had passed. Therefore, allowing a majority of owners to vote to amend the covenants would not subvert the intentions of the developer.

¶27. The Utah Court of Appeals adopted the rule that "a majority of owners" indicates one vote per lot, as opposed to one vote per owner. *Cecala v. Thorley*, 764 P.2d 643, 645 (Utah Ct. App. 1988). In doing so, the Utah court was responding to uncertainty caused by "a total number of voters that would be potentially limitless and not readily ascertainable." *See also Perkins v. B & W Contractors, Inc.*, 439 So.2d 652, 655 (La. Ct. App. 1983). This concern is not present here, as the original and amended restrictive covenants strictly forbid the subdivision of lots.

¶28. In the case at bar, both the original and amended covenants dictate that "no lot in this subdivision shall be subdivided." The chancellor therefore correctly found that the McDonalds' sale of a portion of Lot 2 in 1991 to Al Ashford was in violation of the covenants. Therefore, Ashford should not have had a vote as an "owner" of the lot.

¶29. However, the record shows that at the time of adopting the amended covenants, MHBC, Edward and Mary McDonald, David and Dorothy Hopkins were lot owners, and they voted in favor of adopting the amended covenants. The other lot owners, Johnnie and Joel Hudson, Helen Ogletree, and Pam Jones, voted against the new amended covenants. It should be noted that if the covenants do not specify otherwise, votes to change covenants by a majority of the owners should be on the basis of one vote per lot by the owner.

¶30. Because they were adopted by a majority of the owners of the lots, as provided for in the original covenants, the amended covenants are valid. Though the chancellor applied the wrong legal standard, the result is the same applying the correct standard, and this error is therefore harmless.

¶31. The Appellants further claim that the amended covenants should be held void as against public policy. When they were adopted, the lots subject to them were zoned R-1 residential. The new covenants allow for actions that are forbidden by R-1 zoning. As a result, the Appellants urge, "[a]llowing non-R-1 uses of R-1 property is in clear violation of the Clinton Zoning Ordinance."

¶32. What the Appellants fail to understand is that, regardless of what the covenants say, restrictive covenants can <u>never</u> allow uses of property that are forbidden by zoning laws. Even though provided for in the covenants that regulate the subdivision, any uses of the property in violation of the zoning ordinance are illegal and cannot be ratified by covenants.

> Restrictive covenants do not supercede or in any way affect the requirements of an already existing zoning ordinance. If the restrictive covenant is less restrictive than the ordinance, the ordinance prevails . . . a valid restriction upon the use of property is not terminated, superceded, or nullified by the enactment of a zoning ordinance . . ..

20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 242 (1995). The amended covenants are therefore not void as against public policy, and do not modify the rights and duties legally created by the injunction.

### III. Whether the chancery court erred in failing to award attorney fees to the plaintiffs.

¶33. The award of attorneys' fees is within the sound discretion of the chancellor, but must be supported by credible evidence. ***Young v. Huron Smith Oil Co.***, 564 So.2d 36, 40 (Miss.1990). The chancellor found that the injunction had not been violated by the church, its employees, or its members. His decision was based on substantial evidence. The chancellor therefore did not abuse his discretion in failing to award the residents attorney fees, and this issue lacks merit.

### <u>CONCLUSION</u>

¶34. The chancellor's finding that Morrison Heights Baptist Church did not violate the injunction was based on substantial evidence. Because the amended restrictive covenants were adopted by owners of a majority of the lots and do not violate public policy, they are valid, though they are limited by the zoning laws where the laws are more restrictive than the covenants. The judgment of the chancery court is, therefore, affirmed for the reasons stated in this opinion.

¶35. **AFFIRMED**.

**PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**