62 P.3d 983

**GARDEN LAKES COMMUNITY ASSOCIATION, INC., an Arizona non-profit corporation, Plaintiff–Appellant,**

v.

**William E. MADIGAN and Joan M. Madigan, husband and wife; Henry T. Speak and Lavonne M. Speak, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 00–0570.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 18, 2003.

Review Denied June 30, 2003.

Thomas & Elardo, P.C. By Neal B. Thomas and Mulcahy Law Firm, P.C. By Beth Mulcahy, Phoenix, Attorneys for Appellant.

Law Office of Hyung S. Choi By Hyung S. Choi and Law Offices of Gerald Pollock, By Gerald Pollock, Phoenix, Attorneys for Appellees.

Ekmark & Ekmark, L.L.C. By Curtis S. Ekmark, Scottsdale, Attorneys for Amicus Curiae Sun City Grand Community Association, Inc.

## OPINION

GEMMILL, Judge.

¶ 1 Homeowners in the Garden Lakes subdivision in Avondale, Arizona are members of the homeowners association known as the Garden Lakes Community Association, Inc. ("Association"). The Association issued architectural restrictions governing the construction and appearance of solar energy devices on homes within the subdivision. The appellee homeowners claimed that the restrictions were unenforceable under Arizona Revised Statutes ("A.R.S.") section 33–439(A)(2000) because the restrictions "effectively prohibited" the homeowners from installing or using solar energy devices. The trial court found in favor of the homeowners. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 William and Joan Madigan and Henry and LaVonne Speak owned homes in the Garden Lakes subdivision. To provide a general plan for the use and enjoyment of the planned community, the Association recorded a Declaration of Covenants, Conditions, Restrictions and Easements for Garden Lakes ("Declaration"). The Declaration applies to all owners of property within Garden Lakes who purchased a lot after the Declaration was recorded on January 28, 1986. The Madigans and the Speaks purchased their lots thereafter and accepted their deeds subject to the following provision in the Declaration:

No improvements, alterations ... or other work which in any way alters the exterior appearance of any property or improvements thereon ... shall be made or done ... unless and until the Architectural Review Committee has, in each such case, reviewed and approved the nature of the proposed work, alteration, structure or grading and the plans and specifications therefor.

The Association established an architectural review committee ("ARC") and architectural review guidelines ("guidelines").

¶ 3 Guidelines were issued regarding the construction and appearance of solar panels and equipment:

1. All solar energy devices Visible from Neighboring Property or public view must be approved by the Architectural Review Committee prior to installation.

2. Panels must be an integrated part of the roof design and mounted directly to the roof plane. Solar units must not break the roof ridge line, must not be visible from public view and must be screened from neighboring property in a manner approved by the Board of Directors or its designee(s). Roof mounted hot water storage systems must not be Visible from Neighboring Property. Tracker-type systems will be allowed only when not Visible from Neighboring Property.

3. The criteria for screening set forth in Section III(M) "Machinery and Equipment", shall apply to solar panels and equipment.

(Original capitalization preserved). Under the "Machinery and Equipment" section, the guidelines provided:

[S]creening or concealment shall be solid and integrated architecturally with the design of the building or structure, shall not have the appearance of a separate piece or pieces of machinery, fixtures or equipment, and shall be constructed and positioned in such a manner so it is level and plumb with vertical building components and shall be structurally stable in accordance with sound engineering principles.

¶ 4 The Madigans and the Speaks installed solar energy devices ("SEDs") on the roofs of their respective homes without ARC or Association approval. These SEDs included solar panels to collect and transfer heat to their

swimming pools. The Association sued the Madigans and the Speaks in separate actions, alleging failure to comply with the guidelines and breach of the Declaration. The Association sought permanent injunctions compelling the removal of the SEDs, monetary penalties, and attorneys' fees and costs. The Madigans and Speaks defended on the basis of A.R.S. § 33–439, arguing that subsection (A) rendered the guidelines void and unenforceable:

> Any covenant, restriction or condition contained in any deed, contract, security agreement or other instrument affecting the transfer or sale of, or any interest in, real property which *effectively prohibits* the installation or use of a solar energy device as defined in § 44–1761 [1] is void and unenforceable.

Ariz.Rev.Stat. ("A.R.S.") § 33–439(A)(2000)(emphasis added).

¶ 5 The two actions were consolidated. Prior to trial, the Association waived the estimated $100,000 in fines allegedly owed by the Madigans and the Speaks. Also, William Madigan died before trial and Joan Madigan had the solar equipment removed from the roof of her home. The case was tried to the court with an advisory jury. The court was not asked to make findings of fact and conclusions of law.

¶ 6 During trial, the court granted judgment as a matter of law in favor of the Madigans. The Association's case against the Speaks was submitted to the advisory jury with special interrogatories.[2]

¶ 7 After post-trial briefing, the trial court entered judgment in favor of the Speaks and Madigans. The court found that the Association's guidelines, combined with the Association's conduct, "effectively prohibited" the Speaks from placing solar energy devices on their residence. The court therefore concluded that, based on A.R.S. § 33–439(A), the Association was not entitled to an injunction enforcing the guidelines regarding solar energy devices. The court also awarded attorneys' fees and costs to the Speaks and Madigans.

¶ 8 The parties agree that the homeowners did not comply with the architectural guidelines of the Association and did not have the approval of the Association or its ARC for installation of their SEDs. The Association on appeal makes several arguments in support of its fundamental position that the trial court erred in concluding that the guidelines were unenforceable under A.R.S. § 33–439(A). Before addressing the substantive issues presented, we first identify the applicable standards for our review.

## STANDARDS OF REVIEW

¶ 9 Neither side requested that the court make specific findings of fact and conclusions of law pursuant to Arizona Rule of Civil Procedure 52(a), and the court did not, *sua sponte*, make detailed findings. Accordingly, we presume that the trial court found every fact necessary to support its judgment and we will affirm if any reasonable construction of the evidence justifies it. *Neal v. Neal,* 116 Ariz. 590, 592, 570 P.2d 758, 760 (1977); *In re CVR 1997 Irrevocable Trust,* 202 Ariz. 174, 177, ¶ 16, 42 P.3d 605, 608 (App.2002). Although an advisory jury heard the evidence and answered special interrogatories, it is the findings and judgment of the court that are presumed to be correct rather than the jury's

---

1. "Solar energy device" is defined as "a system or series of mechanisms designed primarily to provide heating, to provide cooling, to produce electrical power, to produce mechanical power, to provide solar daylighting or to provide any combination of the foregoing by means of collecting and transferring solar generated energy into such uses either by active or passive means." A.R.S. § 44–1761(4)(Supp.2000).

2. In response to the interrogatories, the advisory jury found that (1) the Speaks accepted the deed to their property subject to the Declaration; (2) the Speaks did not obtain approval of the ARC prior to installing solar panels on the roof of their home; (3) the Association's guidelines do not effectively prohibit the use of solar energy devices; (4) the Association's guidelines regarding solar energy devices are not reasonable and unambiguous; and (5) there were no viable options available to the Speaks for the installation and use of solar energy. Although finding number (3) appears to favor the Association, the trial court in reaching its final determination reasoned that this finding was based on an inartfully worded interrogatory that was confusing to the jury and further that the jury findings were not binding.

answers to the interrogatories. *See* Ariz. R. Civ. P. 39(n) ("The answers shall be only advisory to the court."); *see also Merryweather v. Pendleton,* 91 Ariz. 334, 338, 372 P.2d 335, 338 (1962); *Carrillo v. Taylor,* 81 Ariz. 14, 19, 299 P.2d 188, 191 (1956).

¶ 10 The Association sought an injunction against the Madigans and Speaks. We apply an abuse of discretion standard when reviewing the denial of injunctive relief. *Horton v. Mitchell,* 200 Ariz. 523, 526, ¶ 12, 29 P.3d 870, 873 (App.2001). However, to the extent that we are called upon to construe A.R.S. § 33–439(A), our review is *de novo. See Lewis v. Ariz. Dep't of Econ. Sec.,* 186 Ariz. 610, 614, 925 P.2d 751, 755 (App. 1996).

¶ 11 With these principles in view, we address the issues raised in this appeal.

## ANALYSIS

¶ 12 The Declaration constitutes a contract between "the subdivision's property owners as a whole and the individual lot owners." *Horton,* 200 Ariz. at 525, ¶ 8, 29 P.3d at 872 (citing *Ariz. Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993)). The Madigans and Speaks purchased their homes subject to the restrictions in the Declaration and the guidelines issued pursuant to the Declaration. *See Duffy v. Sunburst Farms East Mut. Water & Agric. Co.,* 124 Ariz. 413, 416, 604 P.2d 1124, 1127 (1979). Restrictive covenants and architectural guidelines that are clear and unambiguous are generally enforceable against the individual homeowners within the association. *Id.* at 416–417, 604 P.2d at 1127–28. The Arizona legislature has carved out an exception to the enforceability of these contracts, however, for restrictions that "effectively prohibit" the installation or use of solar energy devices. A.R.S. § 33–439(A).

¶ 13 The Association argues that § 33–439(A) essentially means that covenants, restrictions, and conditions in deeds,

along with guidelines promulgated under them, must lead to the "inevitable preclusion" of the installation of solar energy devices to render such limitations void and unenforceable. The Association contends that the Speaks had the burden of proving that the Declaration and guidelines "inevitably precluded" the installation of their solar heating unit and that they failed to meet that burden of proof. The Speaks respond that the evidence showed that the Association's requirements for installation of the solar heating device either could not be met or added so much cost to the installation that any homeowner would forego solar energy and opt instead for a gas or electric pool heater.

¶ 14 To decide this case, we must interpret A.R.S. § 33–439(A). Our goal in interpreting statutes is to fulfill the intent and purpose of the legislature. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *State v. Christian,* 202 Ariz. 462, 463, ¶ 5, 47 P.3d 666, 667 (App.2002). We look first to the plain language of the statute as the most reliable indicator of its meaning. *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). To assist in determining the legislative intent, we may also consider the statute's context, language, subject matter, historical background, effects and consequences, spirit and purpose. *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 15 The Arizona legislature's enactment of laws encouraging the use of solar energy dates back to at least 1974. In that year, the legislature passed a bill allowing amortized deductions for expenditures incurred in the acquisition of any solar energy device designed to produce heat or electricity. 1974 Ariz. Sess. Laws, ch. 165, § 2. In 1977, the legislature added a tax credit for Arizona taxpayers who install solar energy devices. 1977 Ariz. Sess. Laws, ch. 81, § 4.[3]

¶ 16 The statute at issue here, A.R.S. § 33–439(A), was enacted in 1980.[4] The en-

---

3. Currently, Arizona taxpayers can qualify for a tax credit equal to twenty-five percent of the cost of a solar energy device up to a maximum of $1,000. A.R.S. § 43–1083(A) and (B)(Supp. 2000).

4. *See* 1980 Ariz. Sess. Laws, ch. 39, §§ 2, 13. This statute does not apply to deed restrictions in effect at the time of its enactment. A.R.S. § 33–439(B).

actment of § 33–439(A) and other solar energy statutes reveals that the legislature sought to encourage the use of solar energy by offering incentives and limiting disincentives for the use of SEDs. The legislative history, however, does not reveal the precise meaning and application of the crucial phrase "effectively prohibits."

¶ 17 While it might be desirable to have a bright-line rule or formula to determine precisely whether a particular restriction effectively prohibits the installation or use of solar energy devices, the legislature has not chosen to provide guidance beyond the phrase "effectively prohibits." The legislature has instead adopted a practical, flexible standard that permits the many variations of restrictions and effects to be considered on a case-by-case basis. *See Palos Verdes Homes Ass'n v. Rodman,* 182 Cal.App.3d 324, 328, 227 Cal.Rptr. 81, 83 (1986)(explaining that whether the homeowners association guidelines were, under the California statute, a "reasonable restriction" on the installation of solar energy units was a question of fact to be determined by the trier of fact).

¶ 18 We disagree with the Association's argument that "effectively prohibit" must be interpreted as meaning that any restrictions on SEDs must "inevitably preclude" them before the restrictions should be deemed unenforceable. We decline the invitation to provide a new or alternative definition for the phrase "effectively prohibits." Whether a restriction effectively prohibits SEDs is a question of fact to be decided on a case-by-case basis.

¶ 19 To determine whether a deed restriction effectively prohibits the installation or use of an SED, numerous factors may be relevant. These factors include the content and language of the restrictions or guidelines; the conduct of the homeowners association in interpreting and applying the restrictions; whether the architectural requirements are too restrictive to allow SEDs as a practical matter; whether feasible alternatives utilizing solar energy are available; whether any alternative design will be comparable in cost and performance; the feasibility of making the required modifications; the extent to which the property at issue is amenable to the required changes; whether decisions previously made by the homeowner or a prior owner are responsible for limiting or precluding the installation of SEDs rather than the restrictions themselves; the location, type of housing, and value of the homes in the community; and whether the restrictions impose too great a cost in relation to what typical homeowners in the community are willing to spend. By providing this list of potentially relevant factors and by the comments that follow, we do not intend to predetermine relevancy in any particular case. We do intend, however, to provide general guidance to trial courts and parties involved in or anticipating litigation over restrictions affecting SEDs.

¶ 20 The Association correctly asserts that the burden of proof was on the homeowners to prove that the Declaration and guidelines effectively prohibited them from installing and using a solar energy device. The "party seeking a right or benefit under a statute bears the burden of proving that he comes within the ambit of the statute." *Harvest v. Craig,* 195 Ariz. 521, 524, ¶ 15, 990 P.2d 1080, 1083 (App.1999). Applying the applicable standards of review including the required presumption that the trial court found all facts necessary to support the judgment, *supra* ¶¶ 9–10, we conclude that the homeowners met their burden of proof.

¶ 21 Much of the testimony at trial focused on two alternative designs that the Association argues were feasible and would comply with the guidelines. The Association produced expert testimony supporting the alternatives of constructing a patio cover on the Speaks' home and placing the solar panels on the top of the patio roof or building a screening wall around the existing panels on the roof.

¶ 22 Regarding the patio cover alternative, the evidence revealed two impediments. First, the Speaks' expert testified that a patio cover large enough to hold the Speaks' solar panels would have to be at least thirteen feet by forty feet. The Speaks' pool is about six feet from the back of their house. The proposed patio cover thus would cover part of the pool. Evidence was introduced

that the City of Avondale does not allow patios to encroach into pool setback areas. Second, the Association's construction expert testified that the cost of building a patio cover for the Speaks would be nearly $5,000. The cost of installing the solar panels on the patio roof would be an additional expense.

¶ 23 The other solution suggested by the Association would require the building of an aesthetic screen forty-eight feet long by five feet high on the tile roof to hide the solar panels. The Association's expert opined that the screen could be constructed using louvers—analogous to venetian blinds—that could be adjusted to allow the sun to hit the panels. Even with the louvers, however, at some times of the year the screen would cause some shading on the solar panels, thereby decreasing solar efficiency. The vertical supports and other bracing materials would be constructed of wood painted to match the colors in the subdivision and the roof tile.

¶ 24 The Association's expert admitted that he had never seen this type of screening device on a residential roof. Two other witnesses testified that they had never seen a screen wall of the proposed size built on a residence. Also, a member of the Association's ARC testified that he did not like the idea of screening walls and that to meet the guidelines the screen would have to match the stucco of the house.

¶ 25 The court was entitled to consider the increased cost in reaching its conclusions. The Association argues that cost should not be considered because to do so would create a varying standard for homeowners desiring to install solar energy devices. According to the Association, extra installation requirements might be deemed to be within the reach of a wealthy homeowner while the same requirements might be deemed to effectively prohibit a less affluent homeowner from installing the solar devices.

¶ 26 The cost necessary to comply with aesthetic and architectural restrictions is not, standing alone, dispositive. Because the cost of complying with some restrictions may be so expensive as to effectively prohibit SEDs, however, we conclude that cost is a factor to be considered. The focus of this part of the overall inquiry should be on the motivation of the average homeowner within the association community to install SEDs given the financial burden and potential loss of solar efficiency imposed by the restrictions. The location, type of housing, and value of the homes in the community may be relevant in this inquiry.

¶ 27 We believe that evidence of cost was properly presented in this case. A distributor of solar pool heaters in Arizona testified that in the Phoenix and Tucson markets, most people will not buy a solar system that costs more than $4,500. He explained that because solar systems generally cost more than gas and electric heating devices, solar companies must show consumers that they can recoup the difference in three to five years when the fuel costs for the other methods are considered. If the recoupment period goes beyond five years, most people will not purchase a solar system.[5]

¶ 28 We conclude that substantial evidence supported the trial court's finding that the Association's guidelines effectively prohibited the installation and use of SEDs. The evidence is sufficient to support a finding that the patio cover was not a viable option for the Speaks because the added expense would have dissuaded homeowners in the community from undertaking the project and the size of the patio cover would have violated applicable city restrictions. The evidence also supports a finding that the proposed screen was no more than an idea that would not work in execution. The decreased solar efficiency and additional cost of the screening provide further support for the court's conclusion.

¶ 29 Apart from evidentiary issues, the Association argues that we should follow the results in *Nahrstedt v. Lakeside Village Condominium Ass'n, Inc.,* 8 Cal.4th 361, 33 Cal. Rptr.2d 63, 878 P.2d 1275 (1994), holding that the condominium association's restriction against keeping cats, dogs, and other animals in the development was enforceable; *O'Buck*

---

5. We emphasize that cost alone should not be dispositive. For example, if the increased cost of complying with the architectural restrictions was $7500 but the homes in the subdivision ranged in value from $500,000 to $1,000,000, the trier of fact might conclude that the increased cost did not effectively prohibit the installation of SEDs.

*v. Cottonwood Village Condominium Ass'n, Inc.,* 750 P.2d 813 (Alaska 1988), holding that the condominium association could reasonably ban rooftop antennas; and *Dunlap v. Bavarian Village Condominium Ass'n, Inc.,* 780 P.2d 1012 (Alaska 1989), holding that the association's regulation against stored vehicles was reasonable and enforceable. These cases, however, are readily distinguishable because no state law established a public policy preference for allowing homeowners to keep animals, have rooftop antennas, or store old vehicles. In contrast, here we must consider the application of a specific statute, § 33–439(A), that nullifies enforcement of deed restrictions that effectively prohibit the installation and use of SEDs.

¶ 30 Section 33–439(A) does not eliminate the power of a homeowners association to impose aesthetic and architectural restrictions on the installation and use of SEDs. But SEDs may not be explicitly prohibited or "effectively prohibited" by the guidelines of an association or by an association's interpretation and application of its guidelines.

¶ 31 Because there was substantial evidence supporting the trial court's ruling that the Association's restrictions effectively prohibited the installation and use of solar energy devices in violation of A.R.S. § 33–439(A), the restrictions as applied in this case are unenforceable and the Association is not entitled to relief. Accordingly, we affirm the judgment in favor of the homeowners.

¶ 32 The homeowners request an award of their attorneys' fees incurred in defending this appeal. The trial court granted an award of attorneys' fees to the homeowners under A.R.S. section 12–341.01(A)(Supp.2000). We likewise, in our discretion, award fees to the homeowners under this statute. The amount of the award of fees and costs will be determined after the homeowners comply with Arizona Rule of Civil Appellate Procedure 21(c).

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and NOEL FIDEL, Judge.